## Appeal of B. B. TODD, INC.                Docket No. 707.

The Board is without authority to require the Commissioner to permit the filing of returns and the computation of income and profits taxes, under the provisions of article 42 of Regulations 45, since such returns, if filed, would not "clearly reflect the income" of the taxpayer and the method of computing income provided in that article does not conform to section 200 of the Revenue Act of 1918.

Submitted February 24, 1925; decided March 16, 1925.

*Leon A. DuBois, C. P. A.*, for the taxpayer.

*Laurence Graves, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1918 to 1920, inclusive, as follows:

| | |
|---|---|
| 1918 | $38,783.03 |
| 1919 | 9,353.93 |
| 1920 | 4,551.50 |
| Total | 52,688.46 |

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation organized in 1918 to take over, as of July 1 of that year, an installment piano and victrola business theretofore carried on by B. B. Todd as an individual in the city of Philadelphia.

The taxpayer's general accounts and general ledger are kept on the accrual basis. That is, as installment sales are made the entire sales price is credited to the installment leases accounts receivable. The cost of goods sold is computed in the ordinary way under an accrual basis; that is, to the inventory at the beginning of the year is added purchases; from the total of these is deducted the inventory at the end of the year. Business expenses are likewise kept on the accrual basis.

The taxpayer also keeps cash books in which are entered, as received, each installment payment identifying in such cash books the lease or installment sale contract number and the name of the payer. These cash book entries are summarized in a separate record, which record, however, does not classify the cash received in accordance with the year of the lease contracts to which they relate.

The taxpayer also keeps what is known as a lease ledger; that is, a ledger account with each of the several articles sold and controlled by the accounts receivable of leases in the general ledger.

It is possible to make up a record by detailed analysis of the taxpayer's books which will show, with respect to the sales of any year, the cash receipts on account of such sales spread over the period from the time of sale to the time of last payment. Such a process, however, can be carried out only by a detailed analysis of the lease ledger and the cash book. This analysis was not made by the taxpayer during the years in question concurrently with the closing of the books.

The taxpayer filed returns for each of the years here in question upon a basis which it alleged to be an installment sales basis of accounting for income, as permitted by article 42 of Regulations 45. Alleging that the report of an examining revenue agent shows that the taxpayer has not kept its books on an installment basis, the Commissioner has refused to accept the conclusions shown by such returns, or to accept amended returns submitted by the taxpayer, and has assessed the deficiency here in question upon the basis of accrued income. From this determination of the Commissioner the taxpayer brings its appeal to the Board.

### DECISION.

The determination of the Commissioner of a deficiency in the sum of $38,783.03 for 1918, $9,353.93 for the year 1919, and $4,551.50 for the year 1920, is approved.

### OPINION.

JAMES: The Board considers that the question presented by the taxpayer is a double one: First, whether it has kept such books and records as would enable the taxpayer and the Commissioner to com-

pute the taxpayer's taxable income upon the basis laid down in article 42 of Regulations 45, and, if it has done so, whether the Board should properly recognize such basis as being one "made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income?" This brings a further inquiry whether the Board may go behind the determination of the Commissioner, as evidenced by article 42, that the installment sales basis does clearly reflect the income if in fact the Board finds that such basis does not do so.

Upon this last point, we have no doubt. At the time section 212(b) of the Revenue Act of 1918 was adopted by Congress, the Board of Tax Appeals was not contemplated, and was not in existence. Upon the Commissioner alone rested the duties of interpreting the provisions of the revenue acts. So far as concerned the executive departments of the Government, his determination, subject to the approval of the Secretary of the Treasury, was final.

The creation of the Board of Tax Appeals has introduced into this administrative system a body neither administrative nor wholly judicial, which is required to pass on the merits of disputed tax deficiencies as between the Commissioner on the one hand and the taxpayer on the other. Its sole function is to determine whether, as a matter of law under the facts of the case, certain deficiencies asserted by the Commissioner should be assessed and collected. Such being the function of the Board, it is its duty to determine from the statute whether the tax asserted by the Commissioner is properly due. In arriving at such a determination, it is concerned with regulations only to the extent that such regulations validly interpret the revenue act in question.

We have had occasion to discuss the significance of section 200, wherein is laid down a dual basis for reporting taxable income, namely, the basis of cash receipts and disbursements or the basis of accrual; and of section 212(b), wherein is laid down the method under which taxpayers report their income, in the *Appeal of Henry Reubel*, 1 B. T. A. 676. In that case there was involved the question whether a taxpayer may report some deductions on a cash and others upon an accrual basis. In dealing with the installment sales basis as laid down by article 42, Regulations 45, we must inquire whether a taxpayer may properly report only the profits realized in cash during a year, while at the same time deducting upon an accrual basis all the cost of goods upon which such profits were realized, and may further deduct accrued expenses of the taxable period for which the reported income is made.

It is important to understand the exact significance of this question. The installment sales basis of reporting income was first recognized by article 117 of Regulations 33, revised. These regulations were promulgated January 2, 1918. On February 25, 1919, Regulations 45, containing article 42, were promulgated by the Commissioner with the approval of the Secretary. These regulations appeared while the war taxes were at their height, one during the war and the other immediately after its cessation. They provided not only that taxpayers who had previously kept their books and made their returns upon the installment basis might continue to do so, but that taxpayers might change, with the approval of the Commissioner,

from the receipts and disbursements or the accrual basis to the installment basis, upon making application so to do.

This opened up a particularly attractive proposal to the taxpayers dealing in property sold on the installment basis. If a taxpayer had been making his returns up to 1916 upon an accrual basis, he had included in gross income subject to tax at low rates all the income received and all the payments anticipated upon sales made to the close of 1916. These anticipated payments in the ordinary course would be made during the years 1917, 1918, and possibly into the year 1919. By changing to the installment basis, such a taxpayer would report none of this income in the years following 1916, and he would report for the year 1918 as gross income only that proportion of the profits accrued in that year which the receipts of the year from contracts entered into during the year bore to the total accruals or accounts receivable set up from contracts made during the year. In other words, while he would deduct the full expenses of 1917, he would report as income only that portion of the profits of the year represented by the percentage of collections to gross sales. In the second year under such a system, the profits of the preceding year realized by collection during the second year would be returned, plus the profits of the second year actually realized by collection. In an installment business, such as pianos, where credits extend over three or four years, this obviously meant that the taxpayer who changed as of January 1, 1917, would not reach, until approximately 1920, the normal level where the profits of prior years coming in would offset the profits of the current year deferred. Even then, if the business was an expanding one, he would always continue to defer the time of reporting taxable income on the expanded basis and would thus possess a continuous advantage over the taxpayer reporting on an accrual basis. But the particularly attractive thing to the installment dealer, in the adoption of these regulations in 1918 and 1919, was the possibility held out to him of deferring the reporting of profits in the high war-tax years until the succeeding years of reduced taxation.

To illustrate from the case before us, the Commissioner finds that on an accrual basis B. B. Todd, Inc., had accrued net income as disclosed by its books for the six months ended December 31, 1918 (the first six months after the corporation was organized) of $57,410.87. The taxpayer itself reported on its original return an increase of surplus in substantial agreement with this computation. The taxpayer now asks this Board to require the Commissioner to adopt, as a basis for its return of net income for 1918, a proposed amended return which shows a net loss of $10,401.93. It does not dispute that upon an accrual basis it realized a gross profit upon piano leases or sales of $64,610.95; upon victrolas of $23,230.13, and upon records and other miscellaneous sales of $9,193.33, but it asks the Commissioner to accept a return which computes its gross profits at $8,724.60, $12,607.08, and $7,130.98, respectively, as to these accrued items.

This reduction is accomplished in the following manner:

The analysis made of the taxpayer's books shows that piano leases or sales entered into during the six months period in 1918, amounted to $117,906.50, that the cost of sales—that is, the inventory at the

beginning plus purchases, less the inventory at the end—amounted to $53,255.95, and that, therefore, the gross profit was 54.8 per cent of the gross sales. The taxpayer also computes that it received during the six months period, on account of the foregoing $117,906.50 of sales, cash in the sum of $15,920.80. Fifty-four and eight-tenths per cent of these cash receipts amounted to $8,724.60, and it asks the Commissioner to accept this amount as the computation of its gross profit on its piano business for the period in question.

Like computations are made in respect of talking machines, records, and minor items.

By minor adjustments the above three items of gross profits are reduced to $26,967.67, and increased by minor items of income to $27,249.19. From this alleged item of gross profit the taxpayer asks to be permitted to deduct *all the accrued business expenses of the period amounting to $37,651.12* whereby it shows a net loss of $10,401.93. This computation correctly reflects the results obtained under the bookkeeping method prescribed by article 42 of Regulations 45, as interpreted and modified by Treasury Decision 3082, and subsequent rulings of the Commissioner.

If this taxpayer were reporting upon a cash receipts and disbursements basis, it would report the total cash received, including the cash received from leases entered into prior to 1918. From this cash received it would deduct the cash expended and would arrive at a net income, correct except to the extent that its business expanded, and, therefore, its accounts receivable and inventory were greater at the close of the year than at the beginning. To report, however, upon a basis which considers only the profit upon the business entered into during a year which is actually reduced to possession in cash, and to exclude all business of prior years reduced to possession in cash, at the same time deducting as expenses all accrued obligations, is to destroy all relationship between the true net income and the income reported for taxation. This is the effect of the installment basis for the earlier years of its adoption, either by reason of the fact that the taxpayer is newly organized and therefore has no prior business experience or by reason of a change of basis from the accrual method.

A report of the Federal Trade Commission, dated January 17, 1923, upon the sales and profits of the installment business, indicates that after a careful examination that Commission came to the conclusion that both sales price and profits are higher in the installment business than in the ordinary furniture and musical-instrument business.

To be sure, the period of collection of accounts is probably longer, losses are perhaps slightly higher; but neither of these factors, in view of the results in net profits, appears to the Board to warrant special and favorable treatment of this class of taxpayers at the expense of all other classes of taxpayers reporting income on the cash or the accrual basis. If entitled to such relief, their appeal lies properly to legislative and not to administrative authority. If income is to be measured in the manner in which business men generally have found it necessary to measure it, the accrual basis is sound and necessary. Cash plays a relatively small part in modern business. The whole structure is built upon the use of credit. The

balance sheet of the taxpayer here in question shows, at the close of 1918, installment accounts receivable of $289,000, and loans, accounts, and bills payable of $190,000. Taxpayers reporting upon a credit or, in other words, upon an accrual basis are allowed to charge off the losses which they sustain on account of the noncollection of debts due them. The entire plan of income taxation recognizes the fact that income is a matter, at best, of estimate, and can never be reduced to absolutely definite terms in the case of a large modern business institution. Such being the case, and the accrual basis being one of two bases clearly laid down in the statute, it is the opinion of the Board that no other basis is so recognized and that no other basis may legally be adopted. This does not mean that there may not be, in the exigencies of individual cases, recognition of minor departures from the accrual or the cash basis, the adoption of minor refinements in the interest of that elasticity necessary if the income tax under the revenue acts is to be adjusted to the idiosyncracies of individual business, but the Board finds no reason for the injection of a system of computing income foreign alike to the cash receipts and disbursements and to the accrual basis.

The Commissioner rejects the taxpayer's proffered returns upon the ground that it did not, during the years in question, keep its books upon the basis now required by the Commissioner of those permitted to return income upon the installment basis. But. the taxpayer can, from the books kept, *compute* its income as accurately as if it regularly kept books upon the basis the Commissioner deems necessary. Income is a matter of fact—not of bookkeeping. The taxpayer is entitled to any *computation* of income made from the facts which is warranted by the Revenue Act of 1918.

The taxpayer comes to the Board appealing from a rejection of its proposed returns upon the installment basis, insisting that the Board should require the Commissioner to compute its deficiency in tax, if any, on that basis. We find no warrant in law so to do.