BENNETT GRAVEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9572, 21209. Promulgated February 3, 1928.

*John A. Conlin, C. P. A.*, for the petitioner.
*L. L. Hight, Esq.*, for the respondent.

514

516

OPINION.

MURDOCK: The Commissioner determined that the petitioner's property had a value of $46,010.84. The petitioner claims that the true value was much greater, and that the mineral deposit in five of the tracts had a value in October, 1914, of $112,182.84. If the fair market value of these deposits was in excess of $46,010.84, it follows that the Commissioner's allowance for depletion was erroneous, because the petitioner paid for the properties principally in its own stock, of which there have been no sales, and the value of this stock, and, therefore, the cost to the petitioner, would depend upon the value of the assets acquired.

To prove this value the petitioner introduced the testimony of two witnesses. One of these witnesses had negotiated a lease for some property similar to and adjoining that of the petitioner. This lease gave the lessee the right to take sand and gravel from the premises in any quantity during the 20 years and 5 months following November 1, 1913, upon payment of a royalty of $3 per car of 50 tons, or at the rate of 6 cents a ton for all taken. In answer to the question " What, in your opinion, was the fair and reasonable market value on or about October, 1914, of these [the petitioner's] deposits in carload lots of 50 tons each?" he replied, " $3."

This question and answer is not intelligible in the light of the context. It does not clearly appear whether the witness was valuing the petitioner's deposits having in mind a sale and purchase of the fee, or whether he was valuing them having in mind a long-term lease. The indications are, however, that he had in mind the latter situation, which represented the method by which he had secured rights for his company, but which is not determinative of the value of the deposits purchased in fee by the petitioner. And even if he had in mind a sale and purchase of the deposits in fee, his opinion would be entitled to little weight, because, aside from the lease, he gave no satisfactory basis for a value of 6 cents a ton, which is the value given in his answer.

The only other witness was the secretary of the petitioner, who stated that, in his opinion, the deposits owned by the petitioner had, at the date of its incorporation, a value of 6 cents per ton. Here again we are unable to determine whether the witness had in mind a value for the purposes of a long-term lease, or a value for the purpose of a sale and purchase of the deposits in fee. We are concerned primarily with the fair market value of the deposits themselves, and not the royalty which they might bring on a lease. Aside from the lease this witness gave no satisfactory basis for his opinion, and, consequently, we can give it but little weight, even if he intended to value the fee.

Apparently this witness and the petitioner's counsel believed that the lease for 20 years, which gave the right to remove gravel upon the payment of a royalty of 6 cents per ton, established the value of the deposits owned in fee. But with them we can not agree, for the value of the fee would be no more than the amount that a willing buyer would give and a willing seller would take as of October, 1914; whereas in the lease the lessee would not be required to pay for the gravel except as he removed it, and his payments would be spread over the life of the lease. Both witnesses anticipated that it would take about 18 or 20 years to remove the deposits in question. It is

518

altogether possible and to be expected that a lessor would be willing to sell his holding outright at a much less rate per ton than he would demand if he were to accept the risks and delays incident to a lease. We are likewise unwilling to adopt a valuation arrived at by the use of subsequent earnings, estimated life and Hoskold's formula, as given by the witness. There is no indication that the factors involved in such a valuation were known or even reasonably anticipated in October, 1914. No evidence was presented touching upon the value, if any, which the land acquired had independently of the value of the gravel bed.

Under all of the evidence we are unable to determine that the deposits had any greater value for the purpose of a depletion allowance or for the purpose of determining invested capital than that allowed by the Commissioner. Furthermore, it does not appear what the Commissioner used as the factors of invested capital, or by the comparison of what figures he determined that the tax under section 302 would be less than under section 301, and, even were we able to determine a value of the assets in excess of the value allowed by the Commissioner, we would be unable to give the petitioner any relief. See *Rye Beach Pleasure Park Co.* v. *Commissioner*, 6 B. T. A. 1373, and see also *Atlanta Casket Co.* v. *Rose*, 22 Fed. (2d) 800, decided November 30, 1927. Neither do we know what the Commissioner did in regard to including or excluding inadmissible assets or a percentage thereof in invested capital, but the petitioner concedes that the decision of this point will follow from our decision of the question raised by the first allegation of error. What the Commissioner did in regard to prorating income and profits taxes of prior years in the determination of invested capital is not disclosed, but since the allegation is to the effect that he merely reduced invested capital by the amount of taxes determined to be due for preceding years as and when they were due, whether paid or not, his action was not erroneous in view of section 1207 of the Revenue Act of 1926 and our decisions thereunder. See *Berks Foundry & Manufacturing Co.*, 5 B. T. A. 756.

Inasmuch as the Commissioner has not used invested capital in his determination of the petitioner's tax liability, it becomes unnecessary for us to decide a question raised by the respondent's amended answer, which alleges that in the deficiency notice for the year 1920, there was included in the petitioner's invested capital a portion of the amount of the petitioner's tax liability for the calendar year 1919, although under section 1207, above mentioned, this issue would have to be decided adversely to the Commissioner's contention.

*Judgment will be entered for the respondent.*