*Decision will be entered under Rule 50.*

SOUTH CAROLINA PRODUCE ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32821. Promulgated May 21, 1930.

*Allen W. Gartner, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

TRUSSELL: The petitioner was organized under the general corporation statutes of South Carolina as a cooperative association, for the purpose of marketing its members' perishable produce and purchasing supplies for the use of its members. Petitioner acted as sales agent for its 400 members, who delivered their produce at the association's headquarters at Meggett, where the produce was graded and pooled. Petitioner obtained the best prices possible

in various markets, made the shipments and collections, and made good any losses sustained through the failure of purchasers to pay. The prices obtained and the freight and brokerage fees, if any, differed as to portions of any one day's shipment of one kind and grade of produce, but each member received the average price for the quantity of produce furnished, less the 5 per cent charge made by petitioner. The petitioner did not buy or sell any produce for its own account nor did it handle any produce for nonmembers during the years in question, although its general manager had the authority to do so under article 3, section 8 of the by-laws of the corporation.

The petitioner also operated as purchasing agent for its members, exclusively. It purchased only on orders and carried no stock on hand. Each member paid the average price per unit for the supplies ordered by him, and petitioner made no charge for the service and did not add to the cost the expense incurred by it in making the purchases.

The petitioner's only source of income during 1923 and 1924 was the 5 per cent commission charged on the sales of its members' produce and interest on its bank deposits. During those two years petitioner's income was in excess of all the necessary operating expenses incurred in the sale of produce and the purchase of supplies for its members. Out of the net receipts petitioner paid each year the fixed dividend rate of 10 per cent on the par value of its total capital stock and added $3,000 to surplus and, of the balance, 50 per cent was also added to surplus, while the remainder was set aside for refunds to all of the loyal shippers in proportion to the value of the produce sold during the year for their respective accounts.

The only issue is whether petitioner is exempt from taxation for its fiscal years ended September 30, 1923 and 1924, under the provisions of section 231 (11) of the Revenue Acts of 1921 and 1924, which are identical and are as follows:

Sec. 231. That the following organizations shall be exempt from taxation under this title—

\*        \*        \*        \*        \*        \*        \*

(11) Farmers', fruit growers', or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them; or organized and operated as purchasing agents for the purpose of purchasing supplies and equipment for the use of members and turning over such supplies and equipment to such members at actual cost, plus necessary expenses.

All of the provisions of article 522 of the Commissioner's Regulations 62, pertaining to the 1921 Act, are contained in article 522 of his Regulations 65 of the 1924 Act, which provides:

Art. 522. *Cooperative associations.*—(*a*) Cooperative associations, acting as sales agents for farmers, fruit growers, live-stock growers, dairymen, etc., or engaged in the marketing of farm products, and turning back to the producers the proceeds of the sales of their products, less the necessary operating expenses, on the basis of the produce furnished by them, are exempt from income tax and shall not be required to file returns. Thus cooperative dairy companies which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses, among the producers upon the basis of the quantity of milk or of butter fat in the milk furnished by such producers, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the statute and is not exempt. The accumulation and maintenance of a reasonable reserve for depreciation or possible losses or a reserve required by State statute or a reasonable sinking fund or surplus to provide for the erection of buildings and facilities required in business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes, will not destroy the exemption. A corporation organized to act as a sales agent for farmers, or to market cooperatively the products of the farm, and having a capital stock on which it pays a dividend not exceeding 8 per cent per annum or not exceeding the legal rate of interest, and in which the voting control is retained by the shareholders who are actual producers, will not for such reasons be denied exemption.

(*b*) Cooperative associations organized and operated as purchasing agents for farmers, fruit growers, live-stock growers, dairymen, etc., for the purpose of buying supplies and equipment for their use and turning over such supplies and equipment to them at actual cost, plus necessary operating expenses, are also exempt. The provisions of paragraph (*a*) relating to a reserve, sinking fund, or surplus, and to capital stock shall apply to associations coming under this paragraph.

In order to be exempt under either (*a*) or (*b*) an association must establish that it has no net income for its own account other than that reflected in a reserve, sinking fund, or surplus specifically authorized in paragraph (*a*). An association acting both as a sales and a purchasing agent is exempt if as to each of its functions it meets the requirements of the statute.

There is no question but that the petitioner comes within the provisions of the said statutes and the regulations with respect to its being a farmers' association organized and operated as a sales agent for the purpose of marketing the products of its members and, also, purchasing supplies for the use of its members, but does it come within the provisions of the statutes and the regulations with respect to the distribution of its net receipts derived from commissions charged its 400 members and from interest on its bank deposits? We think not.

The above-quoted sections of the Revenue Acts of 1921 and 1924 provide for exemption from taxation and must be strictly construed and the petitioner must establish clearly that during 1923 and 1924 it complied with the provisions of such sections.

We agree with petitioner that the Commissioner may not by regulations destroy or limit the statutory exemption, but we can not agree with petitioner that the above-mentioned regulations have that

effect because they limit the rate of dividends which may be paid on the capital stock of an organization such as petitioner. With respect to the distribution of the receipts of such an organization, the statute merely provides that it turn " back to them [the members] the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them." The regulations materially enlarge rather than restrict the application of the statutory provisions for tax exemption, for they provide that the accumulation of reasonable reserves and a surplus for buildings and equipment will not destroy exemption and, further, that if a corporation such as petitioner pays dividends not in excess of the legal rate of interest, it will not for that reason be denied exemption. In effect the regulations permit a distribution of profits not in excess of the legal rate of interest. We are of the opinion that the above regulations are both reasonable and sound, for Congress has adopted and incorporated the major provisions thereof in section 231 (12) of the Revenue Act of 1926.

During 1923 and 1924 petitioner's 400 members received or were entitled to receive, as refunds on the basis of the quantity of produce furnished by them, only a very small portion of the petitioner's net receipts, while the balance was added to petitioner's accumulated surplus, out of which it paid 10 per cent dividends on its capital stock, which was held by only a portion of petitioner's members, and those dividends were in excess of the legal rate of interest in South Carolina.

Petitioner contends that the Commissioner has no authority to place a limit upon the price to be paid for the use of capital necessary to operate a legitimate business, but it seems to us that such argument is to the effect that petitioner's 10 per cent dividends were, or were in the nature of, interest payments. In the case of *Sacred Heart Cooperative Mercantile Co.*, 2 B. T. A. 24, in which it was held that dividends paid by the taxpayer did not constitute interest, the Board said:

Dividends upon the capital stock are to be paid only from profits. They are not a charge against the assets of the company, and the Board finds no basis for differentiating such dividends from similar payments upon the stock of any other corporation.

See also *Farmers Cooperative Association*, 5 B. T. A. 61; *Selby Equity Union Exchange*, 12 B. T. A. 1383.

We are of the opinion that during 1923 and 1924 petitioner did not bring itself within sections 231 (11) of the Revenue Acts of 1921 and 1924, and the regulations applicable thereto, and that it was not entitled to tax exemption for those years.

*Judgment will be entered for the respondent.*