*Decision will be entered for the respondent.*

RUST-OWEN LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48960, 62313. Promulgated January 25, 1934.

P. M. Beach, Esq., and John M. Campbell, Esq., for the petitioner.
T. M. Mather, Esq., for the respondent.

OPINION.

GOODRICH: The issue in these proceedings, which were consolidated for hearing, relates to the amount of allowance for depletion of timber to be deducted from petitioner's income for each of the years 1927, 1928, and 1929. In its returns petitioner claimed allowances computed upon its cuttings in those years at rates of $14 per thousand feet for pine and $4 for hardwood and hemlock. Although he allowed those rates in prior years, respondent reduced them to $7.5976 for pine and $2.042 for hardwood and hemlock in computing the depletion allowances for 1927 and 1928, and reduced them further to $6 for pine and $1.1375 for hemlock and hardwood in his computations for 1929. As a result of the application of the reduced unit rates, respondent disallowed, of the depletion allowances claimed by petitioner in its returns, $102,519.25 for 1927, $65,499.04 for 1928, and $104,433.35 for 1929. His denial of those claimed deductions from income gives rise to deficiencies of $16,172.71, $8,715.62, and $11,855.40, respectively, for these three years now before us. Petitioner objects to the reductions made in unit rates, and contends that the valuation of its reserves as of March 1, 1913, should be increased and the depletion allowances for its cuttings continued at the rates first fixed.

There is no dispute concerning the facts, and we adopt as our findings the written stipulation submitted and the statements agreed to upon the record at trial. Their repetition here is unnecessary to an understanding of the issue.

Prior to 1913 petitioner (a corporation having its principal office at Drummond, Wisconsin) owned in fee certain timberlands in Bayfield County, Wisconsin. During 1908 and 1909 these lands were cruised, and the estimates of reserves so obtained entered on the company's records, and later adjusted for cuttings and purchases, to reflect the reserves as of March 1, 1913.

In February 1921, for the purpose of securing a depletion allowance, petitioner filed with respondent a questionnaire on the form required, setting forth detailed information respecting its timber and adjusting the first estimate of its reserves as of March 1, 1913,

in accordance with its cutting experience. It reported less of pine, and more of an aggregate of hardwood and hemlock than it had first set up on its books. This adjusted estimate of stumpage, and petitioner's estimate of total value, which it obtained by multiplying the amount of timber by $14 per thousand for pine, and $4 per thousand feet for hardwood and hemlock, respondent used as a basis for his valuation of petitioner's reserves.

By the end of 1926 it was apparent that both petitioner and respondent had underestimated the timber reserves as of March 1, 1913; that, using the unit rates previously allowed, the valuation base would be extinguished before the timber was exhausted. Accordingly, in computing the allowance for 1927 and 1928, respondent made a new estimate of uncut reserves and reduced the unit rate to figures (mentioned above) which, he calculated, would effect a proper extinguishment of the base value. However, when respondent considered petitioner's return for 1929, he determined that the proper extinguishment of the base value. However, when respondent considered petitioner's return for 1929, he determined that the unit rates were still too high, and again reduced them, as above stated.

The cutting of petitioner's timber was completed during 1930; consequently, the actual figures as to the reserves are now available. Making adjustments for sales and purchases of timber, the reserves as of March 1, 1913, (1) according to the first estimates, based on cruises and set up on petitioner's books, (2) according to the determination made by respondent in 1921, and (3) according to the records of cut, are as follows:

|  | Pine | Hardwood and hemlock |
|---|---|---|
|  | *M feet* | *M feet* |
| Original cruise (adjusted to 3/1/13) | 392, 438, 000 | 58, 759, 522 |
| Respondent's determination (1921) | 327, 264, 473 | 75, 120, 322 |
| Actual cut (adjusted for sales and purchases) | 341, 953, 158 | 105, 547, 630 |
| Overrun (on respondent's determination) | 14, 688, 685 | 30, 427, 308 |

Under the applicable statutes, and regulations promulgated thereunder,[1] in this case the basis to be used in computing petitioner's allowances for depletion is the value, as of March 1, 1913, of petitioner's timber reserves. Such allowances are to be determined under rules fixed by respondent, which provide, *inter alia*, that once the depletion basis is fixed, it shall not be changed, except in case of fraud, misrepresentation, or gross error, but the unit rate may be changed if it is inadequate or excessive for the extinguishment of the basis through exhaustion of the reserves.

---

[1] Sec. 204 (b) ; sec. 234 (a) (8), 1926 Act; sec. 114 (b) ; sec. 23 (1), (m), 1928 Act; art. 230, Regulations 69 ; art. 250, Regulations 74.

Respondent maintains that his action in the case at bar is in accordance with his regulations. He found that continued use of the rates first fixed, applied to the total timber cut, would result in depletion allowances in excess of the basic value. Consequently, he made such reductions in the unit rates as were necessary to properly extinguish the depletion basis. Petitioner contends that the underestimate of the reserves as of March 1, 1913, as disclosed by the figures of the completed cut, was gross error, and sufficient cause, under respondent's regulations, for a revaluation, resulting in an increased basis and the maintenance of the same unit rates of depletion. There is no suggestion of fraud or misrepresentation in the case. And it urges that the revaluation should be made by simply multiplying the unit rates first fixed by the number of units of the reserves as disclosed by the final figures of the cut, asserting that the valuation it claimed in its report of February 1921, which was adopted by respondent as his determination of basic reserve value, was computed by that method. Were this done, it points out, no adjustment would be necessary to unit rates for the overrun of timber not included in its estimate of reserves as of March 1, 1913.

With petitioner's view we cannot agree. In determining the allowance for depletion to which petitioner may be entitled for any year, the primary inquiry concerns the depletable, basic value of the reserves, in this case, the value of the timber as of March 1, 1913. That value is the amount which, under the statute, shall be returned to petitioner through a ratable allowance as the property is depleted by cutting the timber. The unit rate, of course, depends upon the quantity of units contained in the reserve. If it appears that a mistake was made in estimating the number of units, with the result that the unit rate is erroneous, the unit rate should be adjusted or revised so that upon exhaustion of the reserves the depletable value will be extinguished. That is precisely what respondent has done here, and we see no error in his action.[2]

Whether respondent made his determination of basic value by the method petitioner urges should now be used in making a revaluation, we do not know, and we regard the question as immaterial. That is not a correct method, for the basic value must be determined upon facts known, or reasonably to be anticipated, at the basic date. *J. J. White Lumber Co.*, 24 B.T.A. 274.

Petitioner has not shown us that respondent's determination of value is based upon gross error " as to any facts determinable on the date of valuation." As to the value of the timber reserves, whether by unit or in toto, no evidence has been presented. As to

---

[2] As to revision of unit rates see: *Rayville Coal Co.*, 20 B.T.A. 525; *Sterling Coal Co.*, 8 B.T.A. 549; *Kehota Mining Co.* v. *Lewellyn*, 28 Fed. (2d) 995; affd., 30 Fed. (2d) 17; certiorari denied.

the quantity contained in the reserve, the stipulated figures show that the aggregate cut overran the aggregate estimate by about 11 percent. But there is no evidence before us to indicate that this error could have been known or reasonably anticipated on March 1, 1913. The inference is to the contrary, for before that time petitioner had made two cruises of its timber. For all that appears, they were made by competent cruisers and were as accurate as such estimates may be; at any rate, petitioner deemed them sufficiently accurate to be included in its formal report on its properties, submitted under oath to the Government, and carried the figures on its books, apparently relying upon them, for nearly 20 years. Moreover, while the parties stipulate that there was no new timber growth between 1913 and the years now before us, which might account in part for the excess in cut over estimate, and stipulate also that there was no change in cutting methods, it is possible that change in market demands permitted petitioner to cut and market timber of a size and quality not included in its cruise estimates as merchantable, which might account for the excessive cut. Such timber, not being merchantable on March 1, 1913, of course should not have been valued as of that date, and the fact that it might later be marketed could not have been determined at that time. In any event, it has been held that an overrun of 14 percent (which is greater than that in the case at bar) is not regarded as gross error offering cause for a revaluation of the basis. *Boyne City Lumber Co.*, 47 Fed. (2d) 772 (reversing 7 B.T.A. 36).

*Judgment will be entered for the respondent.*