THE STANFORD UNIVERSITY BOOKSTORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49007. Promulgated February 28, 1934.

*Frederick M. Fisk, Esq., W. B. Sanders, C.P.A.,* and *Walter Fox, Jr., Esq.,* for the petitioner.

*Dean P. Kimball, Esq.,* for the respondent.

OPINION.

GOODRICH: Respondent determined deficiencies in income tax for fiscal years as follows:

| | | | |
|---|---|---|---|
| August 31, 1919 | $203.63 | August 31, 1924 | $353.87 |
| August 31, 1920 | 737.46 | August 31, 1925 | 651.67 |
| August 31, 1921 | 2,304.39 | August 31, 1926 | 747.41 |
| August 31, 1922 | 346.81 | August 31, 1927 | 197.90 |
| August 31, 1923 | 650.77 | August 31, 1928 | 110.42 |

Petitioner assails these determinations on two grounds; first, that respondent is bound by the prior ruling of a former Commissioner of Internal Revenue holding petitioner to be exempt from tax; and, second, that it is exempt from tax under the provisions of section 103 (6)[1] or (14),[2] Revenue Act of 1928, and corresponding provisions of prior acts. We hold against petitioner on both contentions.

Petitioner is a cooperative association under the laws of California, organized for the purpose of carrying on " a general mercantile business, for the accommodation of the students and faculty of Leland Stanford Junior University." Membership in the association is confined to persons connected with the university and may be canceled by the directors, who, in turn, are elected by the members. The membership fee is $1, which represents the entire pecuniary interest of a member in the assets of the association and which is returned upon termination of membership. No dividends are paid on the membership fees. The directors are in charge of the business, which is run by a manager employed by them upon salary. Its sales, however, are not limited to members.

Petitioner has two stores, both located on university property, more than a mile from the nearest town. One building it owns and on it pays the university a nominal annual ground rental; the other building it rents from the university for $75 a month. It sells textbooks, stationery, engineering, laboratory and art supplies and equipment, notebooks, pens, typewriters (and rents them also), desk lamps, and other miscellaneous articles used by students, and fills special orders for personal stationery, dance programs, emblems, and books. Textbooks are stocked after inquiry amongst the faculty members as to the expected requirements of the university classes. The bulk of its business is done with students and faculty of the university; sales to outsiders, tourists and visiting parents being a

---

[1] (6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

[2] (14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this title.

small part of the total. Petitioner sells its stock at list or current retail prices, and with each sale issues a cash receipt which may be signed and turned in by the purchaser. Periodically, these receipts are totaled and rebates made to the purchasers from the profits of the association. In the period before us 10 percent of the total sales was thus rebated, except in 1918, when no rebate was paid, and 1920, when 5 percent was paid. In 1926 (the only year as to which we have detailed evidence) the average net profit of its three departments—textbook, miscellaneous, and stationery—were 26.5 percent of its total sales. So far as this record discloses, no part of the earnings of the association was paid to the university, or to any other exempt organization.

The bylaws of the association provide that the profits " shall be added to the common property of the Bookstore " and that upon dissolution of the business " the net assets may, by the vote of two-thirds of the members, be transferred to an organization with purposes similar to those of the Bookstore, or applied to any educational, charitable or benevolent institution or purpose."

Petitioner's contention that respondent may not now lay a tax on its earnings because his predecessor in office was of opinion that it was exempt from taxation, we may dispose of without discussion, since that point has been previously decided adversely. *James Couzens*, 11 B.T.A. 1040; *Arthur H. Lamborn*, 13 B.T.A. 177; *Frances P. McIlhenny et al., Executors*, 13 B.T.A. 288.

Petitioner's contention that it is an exempt corporation offers only little more difficulty. Clearly, it falls without the provisions of paragraph (14), for it is not merely holding property, but is actively engaged in business; moreover, it does not turn over its earnings, less expenses, to an exempt organization. The opposite view it does not press. However, it argues that it falls within paragraph (6) because, (a) it is organized and operated exclusively for educational purposes, (b) it is an integral part of the university, which is an exempt organization, and (c) any surplus which it accumulates will be distributed to some organization of similar purpose or applied to a charitable or educational institution or purpose.

We see no merit in that argument. This petitioner is neither organized nor operated as an educational institution as that term is commonly used and understood. It arranges no lectures, holds no classes, offers no courses. It sells books and supplies to persons in attendance, whether as faculty members or students, at an educational institution, and to anyone else who may come along to buy. Nor is it an integral part of the university; it is a separate legal entity, controlled by its own directors and officers. True, its directors and officers, and members as well, are members of the university faculty,

but it is not shown that a part of the duties of those individuals under their employment by the university is to manage the affairs of this association. True, also, a report of petitioner's condition is made annually to the registrar of the university, but there is nothing in the record before us to show that the university, as such, takes any action respecting the report, or exercises any control over petitioner's affairs. As to the provision of the bylaws providing for the ultimate distribution of petitioner's accumulated surplus to an exempt corporation, suffice it to point out that bylaws may be changed, and that up to the present no part of petitioner's earnings has ever been paid to any educational or charitable institution. Cf. *Riverdale Cooperative Creamery Assn.*, 18 B.T.A. 1159; affd., 48 Fed. (2d) 711.

Moreover—and this is controlling of the case without regard to the other considerations urged—the fact remains that a part of the net earnings of the association does inure to private individuals. Dividends or rebates (on its own records petitioner uses both terms) are regularly paid to such customers as turn in their purchase receipts. Though the majority of them may be students or faculty members of the university, still such customers are private individuals so far as this statutory provision is concerned (being an exemption it must be strictly construed) and it cannot be disputed that they receive such part of the association's net earnings as its directors see fit to distribute.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

VAN FOSSAN, dissenting: I cannot agree with the majority opinion in holding that petitioner is not exempt from tax.

The petitioner contends that while it has a separate corporate existence it is, in fact, an ancillary part of Stanford University and an essential factor in the proper administration of the university's activities.

The petitioner's corporate structure and its method of conducting its business show conclusively that no part of its net earnings inures to the benefit of any private stockholder or individual. The bylaws specifically provide that the pecuniary interest of a " member " or shareholder is limited to his $1 membership fee, that no interest or dividend shall be paid thereon, that no distribution of the profits or assets shall be made to members, and that upon the cessation of membership the fee shall be returned to the member or his legal representative. The conditions imposed by the bylaws were carefully observed. Whatever so-called profits or earnings were available were distributed by way of rebate to the students and faculty

purchasers and not to the petitioner's shareholders or members. Such "profits" were determined after paying all necessary expenses of operation and setting aside a reserve for working capital and emergency requirements. The only effect of this distribution was to sell the books and supplies for less than the quoted price.

The amounts retained in surplus were added to the "common property of the Bookstore." Since only the current excess of assets over expenditures was made the basis of rebate, the accumulated amounts so retained remained in the surplus account unless needed for expenses or an unexpected demand such as loss by fire, earthquake, etc. Upon the dissolution of the association or the discontinuance of its business the net assets may be transferred to an organization with purposes similar to those of the petitioner or applied to any educational, charitable or benevolent institution or purpose. In no event can any distribution of profits or assets be made to members. Thus in no sense can it be said that any part of the net earnings inures to the benefit of any private shareholder or individual.

We then must determine whether or not the petitioner was organized and operated exclusively for an educational purpose. It is conceded that Stanford itself is an educational institution exempt from taxation under the statute. The question is whether or not the petitioner is such an ancillary organization, essential to the proper and efficient functioning of Stanford, as to bring it within the purview of the statute. I think it is. The record shows that the sole purpose of the petitioner's formation and operation was to provide for the students and faculty of Stanford textbooks and other necessary supplies at the lowest possible cost. The rebate system was utilized as the most convenient means of effecting the low cost. The function performed by the petitioner was as pertinent and necessary to the successful operation of the university as many other activities which, under certain circumstances, conceivably could be dispensed with—the maintenance of a dormitory, or the operation of a dining hall. Nor is the incidental receipt of an operating profit indicative of a departure from its basic purpose any more than the sale of agricultural products raised on the institution's ground, or the charging of admission fees to athletic contests. The primary purpose for which a corporation is organized and according to which it operates determines its rights to exemption. *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U.S. 578; *Unity School of Christianity*, 4 B.T.A. 61; *Sand Springs Home*, 6 B.T.A. 198; *Frederic C. Leubuscher, Executor*, 21 B.T.A. 1022. I conclude, therefore, that the activity itself can properly be classed as educational in character.

I am further of the opinion that the petitioner was so closely connected with Stanford as to be considered an associated part of its educational plant. The members of the petitioner all belong to

the Stanford faculty. They represented many departments. In fact, no one not connected with Stanford could be a member. The kind and number of textbooks and forms carried by the petitioner were absolutely dependent upon the preference of the professor and the popularity of his course. The petitioner's sales to persons not connected with the university were casual and insignificant—less than 1 percent of the total sales. Its sales of textbooks and supplies formed approximately 90 percent of its business. Its purchases and sales were, therefore, directly related to the needs of Stanford. The petitioner's bookstore was situated on Stanford campus, a mile and a half from the nearest town. Geographically, therefore, as well as otherwise, its operations were peculiarly limited to Stanford students and professors and were essential to the efficient conduct of the university. There was no private bookstore offering the same services. The bookstore made a report to the university annually. The record establishes as a fact that the operation of a bookstore on or near the campus of the university was essential to the efficient operation of the university.

In my opinion the facts presented prove that the primary and underlying purpose of the petitioner's organization and operation was educational and that it is entitled to exemption under the provisions of section 103 (6) of the Revenue Act of 1928 and like sections of prior acts.

SMITH and ADAMS agree with this dissent.
TRAMMELL agrees with the result reached in this dissent.