CAPE HENRY SYNDICATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69834. Promulgated May 23, 1934.

*J. Gilmer Korner, Jr., Esq.,* for the petitioner.
*O. W. Swecker, Esq.,* for the respondent.

OPINION.

MURDOCK: The taxpayer, on its return for the fiscal year ended November 30, 1930, claimed a deduction of $8,863.25 representing depletion of its sand property consisting of three large dunes of wind-blown sand situated on property purchased in 1902. The Commissioner allowed a deduction for depletion of $2,447.77 and determined a deficiency in tax of $329.32. He denied the taxpayer's contention for a greater March 1, 1913, value for its sand deposits and, in computing the deduction which he allowed, used $97,212.19 as the value on March 1, 1913, of the petitioner's property subject to depletion, 128,000 cars as the mineral reserve, $0.75947 as the rate of depletion per car recovered, and 3,223 as the number of cars recovered during the taxable year. The parties stipulated at the hearing that the mineral reserves at March 1, 1913, consisted of 162,637 cars and they also agree that 3,223 cars were recovered in the taxable year.

The petitioner's assignment of error is as follows:

The Commissioner has erroneously determined the valuation of certain sand deposits as a basis for deductible depletion and in so doing respondent has ignored the value found by him to be actual value at March 1, 1913 (under which valuation prior years have been settled) and in the instant case has adopted a theoretical valuation not based upon actual facts, conditions or examinations.

It made under this assignment two distinct contentions. The first was that the value of its property at the basic date had been determined and approved by the Commissioner before the notice of deficiency was mailed, there had been no change of ownership, and

article 228 of Regulations 74 prohibited any revaluation either by the Commissioner or by the Board except on a showing of misrepresentation or fraud or gross error as to a fact determinable on the basic date. The petitioner was limited to a formal offer of proof on this point and the evidence was rejected, following which the petitioner's motion to require the Commissioner to assume the burden of proof and to limit the proof to a showing that there had been a change of ownership, or fraud or misrepresentation in the determination was denied. Subsequently, all of the proof offered on this point came in for a different purpose.

Section 23 of the Revenue Act of 1928 provides for various deductions, including:

(1) In the case of * * * natural deposits, * * * a reasonable allowance for depletion * * * according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner * * *.

Subsection (m) fixes the basis for depletion, in this case the value of the property on March 1, 1913. Sections 23 (m), 114 (b) (1), 113 (b). The March 1, 1913, value of the property is the only factor for computing the deduction for depletion which is now in dispute. The petitioner contends for a higher value than the Commissioner has allowed in determining the deficiency. In such cases the statute provides for an appeal to the Board where the petitioner can establish the correct deficiency by proof and the Board is charged with the duty of hearing the evidence and redetermining the deficiency in accordance with the statute and the evidence. The statute gives every petitioner the right to prove the correct basis for depletion and to have its tax liability redetermined before the Board after deducting a reasonable allowance for depletion computed by the use of that basis.

This petitioner contended that the question before the Board was a wholly different one, dependent upon proof of a wholly different kind. He relied upon article 228 of Regulations 74, one of many articles promulgated by the Commissioner relating to subsections (1) and (m) of section 23. Regulations 74, arts. 221 to 257, inclusive. The part of article 228 relied upon is as follows:

Art. 228. *Revaluation of mineral deposits not allowed.*—No revaluation of a property whose value as of the basic date has been determined and approved will be made or allowed during the continuance of the ownership under which the value was so determined and approved, except in the case * * * of misrepresentation or fraud or gross error as to any facts determinable on the basic date. Revaluation on account of misrepresentation or fraud or such gross error will be made only with the written approval of the Commissioner. * * *

The petitioner contended at the hearing that the Commissioner had, prior to the determination of this deficiency, determined and

approved the value of its property as of March 1, 1913, in an amount exceeding the value used in determining the deficiency and was bound thereafter by his original valuation unless he proved misrepresentation or fraud, i.e., that the Commissioner and the taxpayer were mutually bound by the original determination of value by the Commissioner and before proof of the real value on March 1, 1913, could be heard by the Board and a deficiency fixed on the basis proved, the Commissioner must first show misrepresentation or fraud or gross error as to a fact determinable on March 1, 1913. Although this taxpayer argued for this construction, many, if not most, taxpayers would find it objectionable. It would inject into the proceeding before the Board a purely collateral matter, the determination of which would not be determinative of the real issue before the Board, and would not only complicate the hearing unnecessarily, but might effectually prevent the determination of the deficiency in accordance with the statute. Cf. *Clicquot Club Co.* v. *United States*, 13 Fed. (2d) 655.

The Commissioner was both authorized and directed to make rules and regulations for making the allowance under section 23 (1). Some rules and regulations of the Commissioner have the force and effect of law, as, for example, reasonable regulations to make explicit what is general and to clear up uncertainties and ambiguities in the act. *United States* v. *Dakota-Montana Oil Co.*, 288 U.S. 459. Cf. art. 231. But he may not alter, amend, modify, or change the provisions of the act by regulations, *Morrill* v. *Jones*, 106 U.S. 466; *Ramsey* v. *Commissioner*, 66 Fed. (2d) 316; *Wilson* v. *Anderson*, 60 Fed. (2d) 52, nor can he narrow, limit, deny, or destroy by regulation rights given to taxpayers by the act. *Sawyer* v. *United States*, 10 Fed. (2d) 416; *South Carolina Produce Assn.*, 19 B.T.A. 1028; *Waynesboro Manufacturers Assn.*, 1 B.T.A. 911, 915. Article 228 was probably intended to be only an administrative rule for the guidance of subordinates of the Commissioner and of taxpayers in their negotiations with the Commissioner. The construction of this article which this taxpayer contended for would make a value once determined by the Commissioner *res judicata*, not only in the office of the Commissioner, but also in the Board and the courts, would prevent review of the Commissioner's determination by the Board and the courts except upon a showing of misrepresentation or fraud or gross error as to a fact determinable on the basic date, and would permit the Commissioner to completely emasculate the provisions granting to taxpayers the right of appeal to the Board. If the Commissioner ever intended article 228 to have any such effect, then he has attempted to exceed his power and to go beyond the purpose of a regulation in a vain attempt to repeal the provision of the act,

*Merritt* v. *Cameron,* 137 U.S. 551, and to substitute for it a different provision of his own. Therefore we refused to consider that question on its merits. *Boyne City Lumber Co.,* 7 B.T.A. 36. Cf. *Grace Scripps Clark,* 1 B.T.A. 491; *B. B. Todd, Inc.,* 1 B.T.A. 762, 764.

The Board referred to article 228 of Regulations 74 in the case of *James R. McCahill,* 29 B.T.A. 1080, and it likewise referred to article 230 of Regulations 69, containing a similar provision, in the case of *Rust-Owen Lumber Co.,* 29 B.T.A. 922. The petitioner in each of those cases failed to prove a larger value as of the basic date than the value used by the Commissioner in determining the deficiency, and no reliance upon the regulation was necessary to reach the result in either case. Consequently, neither case can be regarded as authority for the contention of the petitioner in this case or as an indication that the Board felt bound by the provision of the regulations. The District Court, in deciding *Boyne City Lumber Co.* v. *Doyle,* 47 Fed. (2d) 772, did not follow article 230 of Regulations 45, prohibiting the revaluation of stumpage, but established a different rule of its own, namely, that a value, once determined, may not be reopened except for fraud, misrepresentation, or gross error. With all due respect to that court, we do not agree with the rule thus stated. *James Couzens,* 11 B.T.A. 1040.

The petitioner's second contention is that the value of its property on March 1, 1913, was $447,251.75 (162,637, the cars in reserve, times $2.75 the price then payable as each carload was removed). It called two witnesses to express opinions of value. Knowledge of the mineral reserves in the properties on March 1, 1913, was not used by either of these witnesses in forming his opinion of value. One stated that although there was more sand there than he could ever remove, still he had no idea of the actual amount available. Each knew that shortly before March 1, 1913, the petitioner had entered into an agreement granting to another the exclusive privilege for five years to remove sand from these dunes upon payment of $2.75 per carload as removed. Neither mentioned $447,251.75, or any other figure, as representing his opinion of the fair market value of the property as a whole on March 1, 1913. Instead each was asked on direct examination to give his opinion of value only in terms of the value of a carload. Their testimony shows that they believed $2.75 a fair amount to pay for sand as it was removed. This is probably all that either one meant to say. One stated, in answer to a question from the presiding Member, that he had no idea what the sand piles were worth as a whole. Yet petitioner's counsel would draw the conclusion from their testimony that because one carload would bring $2.75, the value of the dunes on March 1, 1913, was $447,251.75 (162,637 times $2.75). If either witness intended that

such a conclusion should be drawn from his testimony, then his testimony when weighed with the other evidence is not persuasive as to the value of the depletable property as a whole.

Value has been defined as the price at which property would pass from a seller to a buyer where each was willing but not forced to deal. This price must be expressed in terms of cash or its present equivalent. Where the property to be valued is a large reserve of sand, its value as a whole is not shown to be $2.75 times the total carloads by a fair contract providing that the one party for five years shall have the exclusive right to remove sand upon payment of $2.75 per carload for the amount removed, when it is known that in all probability the amount removed each year will be less than one fiftieth of the whole. *Bennett Gravel Co.*, 10 B.T.A. 513. Since the petitioner was willing to make such a contract, probably it would have taken and could only have gotten much less than $447,251.75 in cash, or its then equivalent, for its property. Certainly payments later to be made under the contract without interest from March 1, 1913, were not the equivalent of cash on March 1, 1913. Cf. *Ithaca Trust Co.* v. *United States*, 279 U.S. 151. The truth of this last statement is obvious upon an examination of the contract and is otherwise shown by the evidence. It is fatal to the petitioner's case. While a formula might be helpful if the future payments had to be reduced to present cash equivalent, yet common sense alone tells that payments later to be made under that contract were less valuable on March 1, 1913, than their total in cash on that date. Thus the cases cited by the petitioner condemning the use of formulae in certain circumstances are not apposite at this point.

The petitioner's evidence does not show that the Commissioner erred. The testimony of the respondent's witness is entitled to weight and indicates that the value determined by the Commissioner was not too low. There was other evidence introduced. Upon all of the evidence we find as a fact that the value on March 1, 1913, of the petitioner's depletable property was not more than $97,212.19 and a reasonable allowance for depletion of that property for the taxable year does not exceed $2,447.77. Since the Commissioner makes no claim for an increased deficiency, these findings are sufficient.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

LANSDON and MORRIS concur in the result, and dissent on that part of the opinion which discusses the regulations.