NATIONAL OUTDOOR ADVERTISING BUREAU, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65252, 70999.    Promulgated July 25, 1935.

*Wilton H. Wallace, Esq.*, and *E. F. Colladay, Esq.*, for the petitioner.

*Nathan Gammon, Esq.*, and *P. A. Sebastian, Esq.*, for the respondent.

OPINION.

McMahon: The first question presented for determination is whether the petitioner is exempt from Federal income tax under section 103 (12) of the Revenue Act of 1928, set forth in the margin.[1]

In *Garden Homes Co.*, 26 B. T. A. 441; affirmed on this point in *Garden Homes Co.* v. *Commissioner*, 64 Fed. (2d) 593, in construing a similar section of the 1926 Act, the Board stated:

---

[1] SEC. 103. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonble reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases.

It seems to us that by the inclusion of the word "like" it was intended that such rule of construction should be applied, thus limiting the associations exempt from taxation under such section to farmers', fruit growers' and other associations of "like" kind, nature or character.

The Circuit Court stated in part:

\* \* \* In construing corresponding sections of the Revenue Acts of 1916 and 1918, the Treasury Department said (I. T. 1312; C. B. I–1, p. 263) "In framing the Statute, Congress appears to have had in mind, agricultural, fruit growing, and similar occupations. Under the doctrine of ejusdem generis the term 'like associations' should be confined to pursuits similar to farming and fruit growing." The subsequent re-enactment of that statutory provision requires that the administrative construction be considered as having been adopted by Congress. \* \* \*

In our opinion this proceeding is governed in principle by *Garden Homes Co., supra.* To the same effect are *Stanford University Bookstore,* 29 B. T. A. 1280, 1283; *Hills Mercantile Co.,* 22 B. T. A. 114, 118, *South Carolina Produce Association* v. *Commissioner,* 50 Fed. (2d) 742, affirming 19 B. T. A. 1028; *Riverdale Co-operative Creamery Association* v. *Commissioner,* 48 Fed. (2d) 711. Anything to the contrary in *Northwestern Drug Co.,* 14 B. T. A. 222, cited by petitioner, was not necessary to the Board's decision therein that petitioner was not exempt, and is not in accord with the rule of statutory construction also stated therein that a taxing statute granting an exemption from taxation must be strictly construed and all doubts resolved in favor of the Government.

In our opinion the petitioner is not an association exempt from taxation under section 103 (12) of the Revenue Act of 1928.

Furthermore, the surplus accumulated by the petitioner can not be considered "a reasonable reserve for any necessary purpose" which is authorized under section 103 (12). The auditor of petitioner testified that in his opinion the surplus of $156,295.98 at the end of 1928, $142,783.36 at the end of 1929, and $221,484.32 at the end of 1930, were reasonable reserves; that no special reserve had been set up on petitioner's books as a reserve for bad debts; and that petitioner regarded the "surplus as a reserve against the bad debt account." The present president of petitioner, who was vice president and general manager in 1928, 1929, and 1930, testified that in his opinion the surplus built up by petitioner in 1929 and 1930 was too low, that the surplus was created as a reserve for the purpose of paying bills promptly in case the collections were not made promptly and to meet unusual or unexpected losses which might arise from failure of its members to pay their accounts, which petitioner felt called upon to pay to plant owners to maintain its credit. He testified that the petitioner had had losses but "Fortunately they have been very

small." He further testified that ordinarily collections from its members were made prior to payment to plant owners and that the petitioner usually received money before it was paid out. There is no testimony as to what portion or percentage of the annual billings to members was uncollectible or what portion or percentage of the annual billings of plant owners to petitioner for advertising of its members petitioner was required to pay without reimbursement therefor. The surplus at the end of 1929 was approximately 24 percent of the accounts receivable and at the end of 1930 it was approximately 70 percent of the accounts receivable. There is no testimony which would reasonably justify the setting up by petitioner of a reserve for bad debts upon such basis. The president also testified that the commissions earned by the petitioner currently had been sufficient to take care of emergencies " because we have been able to acquire the surplus which we have enjoyed without retaining more than 6⅔%."

In any event, the petitioner has failed to show that the surplus constituted a reasonable reserve for any necessary purpose.

The petitioner claims that in 1928 and 1929 it sustained statutory net losses deductible in part in 1929 and 1930. Whether petitioner sustained statutory net losses in 1928 and 1929 is dependent upon the determination of whether the sums of $23,564.03 and $43,787.36 claimed as legal expense deductions in 1928 and 1929, respectively, are " ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Sec. 23, Revenue Act of 1928.

It is contended by the petitioner that the suit brought against it and others was not a criminal suit and did not involve the indictment of anyone, that no proposal was made that penalties be asserted against it or anyone else, that petitioner voluntarily offered to abandon and cancel the contract between it and the General Co. and to eliminate the exclusive agency feature from its stock option agreements before suit was brought, and that the expenses involved were ordinary and necessary expenses incurred in carrying on its business.

A similar issue was presented in General Outdoor Advertising Co., Inc., 32 B. T. A. 1011. That company incurred or paid attorney fees and other expenses as a codefendant with the petitioner herein in the same suit involved here. We are here concerned with the same court decree. Upon similar determinative facts, we held that such attorney fees and other expenses paid or incurred by that company in defending itself in such suit were deductible from its gross income. Upon the whole record and the authority of our holding in that case, we hold that the amount of $23,564.03 incurred in 1928 and the amount of $43,787.36 incurred in 1929 by the petitioner, as heretofore set forth, constitute ordinary and necessary expenses

incurred in carrying on a trade or business within the purview of section 23 of the Revenue Act of 1928.

In view of our holding in this respect, the petitioner sustained a statutory loss of $13,848.75 in 1928 which is allowable as a deduction in computing the net income of petitioner for 1929. The net income for 1929 as adjusted by respondent is $25,399.46. In view of our holding, a net loss will result for 1929, the amount of which is allowable as a deduction in 1930.

The remaining question to be determined is whether the difference between the book value of automobiles used in petitioner's business and the amount allowed therefor in an exchange for new automobiles is allowable as a loss deduction.

The petitioner contends that section 112 (b) (1) of the Revenue Act of 1928 [2] is not applicable, as the automobiles while used in the business were not in any sense held " for productive use " and that the transaction was a simple purchase and sale.

It is apparent from the record that the transaction constituted an exchange and not a separate sale of the old automobiles and a separate purchase of the new automobiles. New automobiles were purchased and the old automobiles were turned in as a part of purchase price of the new automobiles. The automobiles were used by petitioner's inspection service department, which department was essential to the most important activity of petitioner, in fact the activity upon which its entire business rested. This was the gathering of information relative to space suitable for outdoor advertising and the personal inspection of all available advertising space throughout the United States so as to be able to perform and render the service for which it was paid. The automobiles were the means employed by petitioner for such purpose and if not directly, at least indirectly, were instrumental in the production of petitioner's income. The transaction is therefore within section 112 (b) (1) of the 1928 Act and the action of the respondent in disallowing the loss of $1.202.02 claimed by the petitioner is approved. See *W. H. Hartman Co.*, 20 B. T. A. 302; *Graves, Cox & Co.*, 27 B. T. A. 546; and *George E. Hamilton*, 30 B. T. A. 160; I. T. 2356, C. B. VI–1, p. 168; I. T. 2419, C. B. VII–1, p. 231; and I. T. 2573, C. B. X–1, p. 215.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) *Exchanges solely in kind.*—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

TURNER, dissenting: I am unable to agree with the conclusion reached in the majority opinion in respect of the deduction claimed for attorney fees. The facts show that they were paid for legal services rendered in the defense of certain acts of the petitioner which were admitted in a consent decree to have been illegal, and, in my opinion, the rule laid down in *Burroughs Building Material Co.* v. *Commissioner*, 47 Fed. (2d) 178, should be applied.

VAN FOSSAN and SEAWELL agree with this dissent.