DOUGLAS J. LEMERY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2306–67.   Filed March 12, 1970.

*Roger E. Lageschulte*, for the petitioner.
*Stephen E. Silver*, for the respondent.

484

**OPINION**

During the calendar year 1964 petitioner received $140,080.50 in exchange for shares of stock of Code-A-Phone. Respondent determined that 50 percent of the amount received was taxable as a long-term capital gain (sec. 1202).[4] Petitioner, however, contends that he is exempt from the tax on capital gains under article VIII of the Income Tax Convention and Protocol between the United States and

---

[4] Respondent's notice of deficiency did not take into account petitioner's basis in Code-A-Phone. Petitioner has indicated that because his basis in the stock is *de minimis* he will not contest this issue.

Canada, March 4, 1942, as amended, 56 Stat. 1399 (effective Jan. 1, 1941) (hereinafter sometimes referred to as treaty), and respondent concedes that under Code sections 894 and 7852(d), petitioner must prevail if article VIII of the treaty is applicable to the facts of the instant case.

Article VIII of the treaty provides:

> Gains derived in one of the contracting States from the sale or exchange of capital assets by a resident or a corporation or other entity of the other contracting State shall be exempt from taxation in the former State, provided such resident or corporation or other entity has no permanent establishment in the former State.

The regulations promulgated under article VIII of the treaty provide, *inter alia*, that the—

> gain derived from the sale or exchange within the United States of capital assets by a *nonresident alien individual resident in Canada* * * * is exempt from Federal income tax * * * [Emphasis supplied.] [5]

Accordingly, before an individual may claim immunity under the treaty from income tax on the gain derived from the sale or exchange of a capital asset, it must be established that he is a nonresident alien. See *William E. Adams*, 46 T.C. 352, 362. Thus, as recognized by both petitioner and respondent, the applicability of article VIII of the treaty is dependent upon whether the petitioner was a nonresident alien.[6]

Although, as a general rule, the burden of proof in this Court is upon the petitioner,[7] an alien, by reason of his alienage, is presumed to be a nonresident alien. Sec. 1.871-4(b), Income Tax Regs. The presumption, however, may be overcome by proof of acts and statements of the alien demonstrating an intention to acquire residence in the United States or by proof that his stay in the United States has been of such an extended nature as to constitute him a resident. Sec. 1.871-4(c)(2)(iii), Income Tax Regs. Thus, the effect of the presumption is to relieve the petitioner at the outset from establishing that he is a nonresident alien. The burden of proof, however, is not shifted; the petitioner must meet the respondent's counterproof and go forward to make good his total case.

As noted earlier a nonresident alien is an individual whose residence is not within the United States and who is not a citizen of the United States. Sec. 1.871-2(a), Income Tax Regs. In defining residence we are guided by section 1.871-2(b), Income Tax Regs., which provides:

---

[5] Regulations under Tax Conventions, Canada, 26 C.F.R. sec. 519.110(a).

[6] A nonresident alien as defined by sec. 1.871-2(a), Income Tax Regs., is an "individual whose residence is not within the United States, and who is not a citizen of the United States."

[7] Rule 32, Tax Court Rules of Practice.

Sec. 1.871–2 Determining residence of alien individuals.

(b) *Residence defined.* An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

Petitioner does not directly contend that he had not become a resident of the United States prior to the year in issue, but places his reliance on O.D. 468 which is discussed *infra.* In light of the above regulations and the facts of the instant case it is very clear that he had acquired residency.

We base this finding on the entire record, and particularly upon (1) petitioner's statement in his visa application that his purpose in entering the United States in 1958 was to reside permanently; (2) that petitioner and his wife physically resided in Bellevue, Wash., from September of 1958 until June of 1964; (3) that petitioner's son Thomas was continuously enrolled in the Bellevue school system from 1958 until graduation in 1962; (4) that petitioner's son Charles was continuously enrolled in the Bellevue public school system from kindergarten in 1960 until the end of the 1963–64 school year on June 4, 1964; (5) that petitioner's daughter Sally first enrolled in the Bellevue public schools on September 4, 1962, and was in continuous enrollment thereafter until June 4, 1964; (6) petitioner did not maintain another residence outside of the United States from 1958 to 1964; (7) for the years 1961 through 1963, Form 1040 was filed by petitioner (U.S. Individual Income Tax Return) as opposed to Form 1040B (U.S. Nonresident Alien Income Tax Return); (8) petitioner had a social security number; (9) his income tax returns for 1961 through 1963 showed in each or some of the years contributions to a church in Bellevue, American Cancer Society, Muscular Dystrophy, March of Dimes, and Red Cross; (10) petitioner, in his income tax returns for 1961 through 1963, also claimed deductions for real estate taxes, auto licenses, and a safe-deposit box, all located in the State of Washington.

Thus, we find and hold that petitioner did have a residence within the United States; moreover, section 1.871–5, Income Tax Regs.,[8] provides that once an alien acquires a residence in the United States, an intention to change that status is not enough. He retains his status as a resident until he abandons that residence and actually departs from the United States. *Josette J. F. Verrier Friedman*, 37 T.C. 539, 553 (1961). Therefore, we find and hold further that petitioner was not a nonresident alien for the period January 1, 1964, to June 12, 1964.

In arguing that for the calendar year 1964 he should be considered as a nonresident alien petitioner relies on O.D. 468, 2 C.B. 243–244 (1920), which is set forth in the margin.[9] It is respondent's contention that O.D. 468, which was published in 1920, is both obsolete [10] and in conflict with regulations section 1.871–5, *supra*. He argues that the office decision is obsolete because, as shown by its heading, it was published under that section of the 1918 Revenue Act which has now become section 6851(a) of the Code. Under the 1918 Act the Commissioner, in order to prevent acts tending to prejudice collection procedures, was empowered to declare the taxable year of a taxpayer terminated "at the end of the calendar month then last past." In 1921 the quoted provision was changed to "shall declare the taxable period * * * immediately terminated," which phrase has been carried forward to section 6851(a) of the 1954 Code. Respondent concludes that O.D. 468 had reference to this "jeopardy" procedure and has thus been obsolete since the 1921 change.

While we are inclined to agree with respondent's reasoning and conclusion, there is a more compelling reason for arriving at the same result, i.e., that petitioner is taxable as a resident for the year in issue. Article 313 (sec. 217), Regs. 62 (1922), was identical to present regulations section 1.871–5, *supra*, except for a concluding sentence which did not change its meaning. In section 19.211–5, Regs. 103

---

[8] Sec. 1.871–5 Loss of residence by an alien.

An alien who has acquired residence in the United States retains his status as a resident until he abandons the same and actually departs from the United States. An intention to change his residence does not change his status as a resident alien to that of a nonresident alien. Thus, an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.

[9] "SECTION 250, ARTICLE 1013: Declaration of termination of taxable period. 16–20–867
(Also Section 217, Article 312.) O.D. 468

"The status of an alien leaving the United States during the taxable year is determined by his status on the last day of his taxable period. The taxable period is the interval between January 1 and the last day of the month preceding his departure. If the alien had formed no intention of leaving the United States by such date he will be taxed as a resident alien. If, however, his intention to depart was formed prior to the last day of the month preceding departure, he will be taxed as a nonresident alien for such period. * * *"

[10] O.D. 468 was declared obsolete by Rev. Rul. 68–674, 1968–2 C.B. 609. The effect of this declaration is to indicate that such rulings will no longer be determinative with respect to future transactions. See Rev. Proc. 67–6, 1967–1 C.B. 576.

(1940), this last sentence was dropped and the regulation has remained unchanged to the present time.

It is obvious that the regulation and the office decision are in direct conflict if we accept petitioner's premise that the office decision applied generally to the provisions of the treaty. This in itself is a strong argument in favor of respondent's position that the office decision was applicable only to the jeopardy situation, but more importantly, petitioner cannot prevail even if we accept his premise.

The office decision and the regulation were both in existence when the treaty was adopted, during the year in issue, and at all times in between. They were in direct conflict, and as between the two the regulation must take precedence.

Treasury regulations, addressed to and adopted to the enforcement of a revenue statute, have the force and effect of law if said regulations are not unreasonable and plainly inconsistent with the statute. See, e.g., *Helvering* v. *Winmill*, 305 U.S. 79, 83 (1938). An office decision, however, does not have the force and effect of a Treasury regulation; *Helvering* v. *N.Y. Trust Co.*, 292 U.S. 455, 468 (1934), since each ruling in effect represents only the conclusion of the Internal Revenue Service as to the application of law to certain specified facts. Rev. Proc. 67–1, sec. 13.10, 1967–1 C.B. 554.[11] Accordingly, since as a general rule resident aliens are taxable the same as citizens of the United States, *Josette J. F. Verrier Friedman*, supra at 551; secs. 1.6012–1(a) (1)(ii), 1.871–1, 1.1–1(b), Income Tax Regs.; we find and hold that petitioner is taxable on the $140,080.50 long-term capital gain realized in 1964 from the sale of Code-A-Phone shares.

Respondent determined additions to the tax under section 6653(a). This addition to the tax is imposed when any part of the underpay-

---

[11] See also the caveat appearing at the front of all Cumulative Bulletins. On 2 C.B. (January–June 1920) it reads as follows:

"The INCOME TAX RULINGS constitute a service of information from which taxpayers and their counsel may obtain the best available indication of the trend and tendency of official opinion in the administration of the income and profits tax provisions of the Revenue Acts. The rulings have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of law which has not been formally approved and promulgated by the Secretary of the Treasury. Each ruling embodies the administrative application of the law and Treasury Decisions to the entire state of facts upon which a particular case arises. It is especially to be noted that the same result will not necessarily be reached in another case unless all the material facts are identical with those of the reported case. As it is not always feasible to publish a complete statement of the facts underlying each ruling, there can be no assurance that any new case is identical with the reported case. As bearing out this distinction, it may be observed that the rulings published from time to time may appear to reverse rulings previously published.

"Officers of the Bureau of Internal Revenue are especially cautioned against reaching a conclusion in any case merely on the basis of similarity to a published Income Tax Ruling, and should base their judgment on the application of all pertinent provisions of the law and Treasury Decisions to all of the facts in each case. The Income Tax Rulings should be used merely as aids in studying the law and the Treasury Decisions."

ment of tax is due to negligence or intentional disregard of rules and regulations.

We have examined the record herein with great care, and have included many salient facts bearing on this issue in our findings. Many of these facts are unfavorable to petitioner, but while the issue is not free from doubt, we feel that O.D. 468, *supra*, created such confusion and uncertainty on the question of this petitioner's residence that we cannot say his actions were due to "negligence or intentional disregard of rules and regulations."

*Decision will be entered under Rule 50.*