JOHN T. GAUTHIER and KATHERINE J. GAUTHIER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gauthier v. Commissioner
Docket No. 9403-72.
United States Tax Court
T.C. Memo 1976-166; 1976 Tax Ct. Memo LEXIS 236; 35 T.C.M. (CCH) 746; T.C.M. (RIA) 760166; May 26, 1976, Filed Walter H. Sweeney and Charles A. McNelis, for the petitioners. Marlene Gross, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and addition to tax for the negligence penalty (section 6653(a) of the Code) [1] as follows: Year
Deficiency
Addition to Tax
1967
$ 546.52
$ 27.33
1968
46,909.57
2,345.48
1969
268,191.12
13,409.56
The issues to be decided *237 are: 1. Petitioner John T. Gauthier's basis for computing the capital gain or loss realized on the sale of 28,000 and 35,500 shares of Datronics Engineers, Inc. stock in 1968 and 1969, respectively; 2. Whether Petitioners John T. and Katherine J. Gauthier are entitled to deductions of $765, $1,074.88 and $2,999.12 for charitable contributions for 1967, 1968 and 1969, respectively; 3. Whether Petitioners John T. and Katherine J. Gauthier are entitled to gambling loss deductions in the amount of $1,500 and $2,400 for 1968 and 1969, respectively; and, 4. Whether petitioners are liable for additions to tax as set forth in the preceding schedule. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts and exhibits are incorporated by this reference. John T. and Katherine J. Gauthier, husband and wife, filed their joint Federal income tax returns for the taxable years 1967, 1968 and 1969 with the District Director of Internal Revenue, Baltimore, Maryland. They resided in Bethesda, Maryland, at the time of the filing of their petition. On their 1968 joint Federal income tax return, petitioners reported a *238 $64,491.30 long-term capital loss from the sale of 28,000 shares of Datronics Engineers, Inc. stock. On their 1969 joint Federal income tax return, they reported an $89,007.50 long-term capital loss from the sale of 35,500 shares of Datronics stock. A cost basis of $5 for each share sold in 1968 and 1969 was claimed and the returns reflected the following computations of the losses: Number of
Date
Gross Sales
Long-Term Shares
Acquired
Date Sold
Price
Cost
Loss
1968
11,000
1/61
10/68
$ 37,397.50
$ 55,000
$ 17,602.50
6,000
1/61
11/68
21,918.70
30,000
8,081.30
5,000
1/61
10/68
12,895.00
25,000
12,105.00
6,000
1/61
10/68
3,297.50
30,000
26,702.50
28,000
$ 75,508.70
$ 140,000
$ 64,491.30
1969
14,000
3/15/61
1/69
$ 52,198.75
$ 70,000
$ 17,801.25
6,500
3/15/61
11/12/69
28,793.75
32,500
3,706.25
10,000
1/61
12/1/69
5,000.00
50,000
45,000.00
5,000
1/61
12/15/69
2,500.00
25,000
22,500.00
35,500
$ 88,492.50
$ 177,500
$ 89,007.50
The Commissioner, in his statutory notice of deficiency, disallowed the entire cost basis claimed by petitioner for each year. On January 6, 1961, a *239 written offer to purchase 315,725 shares of Datronics stock was made by Petitioner John T. Gauthier. A total consideration of $31,572 or 10 cents per share, was offered and 97,825 shares were to be acquired from three officer-directors of Datronics and 217,900 shares were to be acquired from the corporation. An agreement for the purchase of the stock was entered into on the same day. On January 14, 1961, petitioner was elected to the board of directors of Datronics and served as its president until sometime in 1971. Petitioner purchased between 160,000 and 180,000 shares of Datronics stock. Throughout 1961, petitioner also purchased an unknown number of shares of Datronics stock on the open market. During the same period, petitioner induced 20 to 30 new employees and directors to join Datronics by agreeing to sell them some of his Datronics stock at 10 cents a share. Pursuant to such agreements, petitioner sold approximately 85,000 to 90,000 shares at 10 cents per share. Petitioner also sold the following shares during 1963 and 1965: Number of
Date of
Date of
Amount
Basis Per
Gain or Shares
Acquisition
Sale
Realized
Share
(Loss)
1000
1/6/61
6/1/63
$ 500
$ .10
$ 400
1700
(8/15/61) *
1/15/65
1,700
3.10
(3,576)
(6/4/63)
6200
12/30/64
5/15/65
3,100
.50
0
1000
12/30/64
10/15/65
100
.50
( 400)
2300
(8/10/64) *
1/15/65
2,300
1.75
(1,730)
(12/30/64)
*240 In September of 1961, petitioner contributed cash and 2,000 shares of Datronics stock to a corporation, Seega, Inc., in return for stock in Seega. The Datronics stock contributed by petitioner and other shares of Datronics stock contributed by the other shareholders, was used by Seega for the purchase of land. Seega was audited by the Internal Revenue Service for its fiscal year ended May 31, 1962 and the examining agent concluded that Seega realized gain on the sale of Datronics stock. The fair market value of Datronics stock was $10 per share at both the time petitioner contributed his Datronics stock to Seega and the time when Seega purchased the land with said stock. However, neither Seega nor its shareholders produced any evidence to substantiate its basis in the Datronics stock contributed by the shareholders to Seega. Seega's representative and the Internal Revenue Service settled the question of the basis of the Datronics stock. The settlement was set forth in a report of examination at $5 per share. At the time of the settlement, neither the examining agent *241 nor Seega nor its shareholders knew when the questioned stock was acquired by petitioner. The $5 basis was agreed to because it was in the middle of the range in value of the Datronics stock which was from 10 cents a share to $10 a share. Subsequent to the settlement and for the sales during 1968 and 1969, petitioner relied on the $5 per share cost basis agreed to in the Seega settlement for all shares of Datronics stock sold by him. On their income tax returns for the taxable years 1967, 1968 and 1969 petitioners claimed deductions for charitable contributions of $765; $1074.88; and, $2,999.12, respectively. Petitioner John T. Gauthier regularly attended Our Lady of Mercy Church in Potomac, Maryland during the taxable years 1967 through 1969. Petitioner Katherine J. Gauthier regularly attended the Sligo Seventh Day Adventist Church during the years in question. Neither petitioner kept a diary or record of contributions made during the taxable years. Petitioners made only cash contributions to their respective churches and petitioners had no receipts to substantiate cash contributions other than one receipt for $2 donated to the Boys' Club of Metropolitan Police, D.C. in *242 1969. Petitioners' contributions identified on their returns as "other approved" and "miscellaneous charities" were estimated. In 1969 Petitioner John T. Gauthier made a gift to the Medical Mission Sisters of $339.70 through the brokerage firm of Jones, Kreeger & Co. Petitioner John T. Gauthier contributed $5 a week in cash to the church he attended during the years in question. Petitioner Katherine J. Gauthier contributed $5 a week to the church she attended during the years in question. During the years in question, Petitioner John T. Gauthier frequented numerous race tracks in the Washington, D.C. area and in Atlantic City, New Jersey. He reported $1,046.60 of gambling income and $1,500 of gambling losses on his 1968 Federal income tax return and $2,432 of gambling income and $2,400 of gambling losses on his 1969 Federal income tax return. The only amounts of gambling income reported for 1968 and 1969 represented winnings for which the race tracks issued U.S. Information Returns (Form 1099). Petitioner earned $250 in race winnings in 1968 which were not included in his reported race winnings because he offset them against losses. A daily summary sheet of net winnings *243 and net losses for a given day at the races was maintained by petitioner but such records were lost. He retained losing tickets which were kept in a shoebox and such tickets totaled $2,872 for 1968. No losing ticket stubs were available at the time of trial for 1969. However, petitioner was authorized to cash personal checks at the local race tracks and during 1969 he cashed checks totaling $10,380. He generally did not use all of the money received from cashing checks at the tracks for wagering but a substantial portion was so used. In his statutory notice of deficiency, the Commissioner disallowed the $140,000 and $177,500 basis claimed by petitioners in their Datronics stock sold in 1968 and 1969, respectively. He also disallowed charitable contributions in the following amounts: 1967
$ 765.00
1968
1,074.88
1969
2,999.12 Gambling losses claimed in the amounts of $1,500 and $2,400 for 1968 and 1969, respectively, were also disallowed. The grounds given for the disallowance of all of the above items was lack of substantiation. ULTIMATE FINDINGS OF FACT 1. The cost basis of 28,000 and 35,500 shares of Datronics Engineers, Inc. stock sold by petitioners *244 in 1968 and 1969, respectively, was 10 cents per share. 2. Petitioners made charitable contributions for the taxable years 1967, 1968 and 1969 in the amounts of $520, $520 and $861.70, respectively. 3. Petitioners sustained gambling losses in the amounts of $1,500 and $2,400 for the taxable years 1968 and 1969, respectively. 4. The underpayments of tax by petitioners for 1967, 1968 and 1969 were due, in part, to negligent disregard of the income tax rules and regulations. OPINION Petitioner John T. Gauthier sold 28,000 shares of Datronics Engineers, Inc. stock in 1968 and 35,500 shares of Datronics stock in 1969. He reported a basis of $5 for each share sold and reported long-term capital losses of $64,491.30 and $89,007.50 for 1968 and 1969, respectively. The Commissioner disallowed the entire cost basis claimed by petitioner for each year and accordingly determined that petitioners should have reported long-term capital gains on the sales of the stock. Petitioner has the burden of proving the cost basis of the shares sold. *245 Burnet v. Houston,283 U.S. 223, 228 (1931). Petitioner relies solely upon the settlement agreement between Seega, Inc. and the Internal Revenue Service to substantiate his reported basis of $5 a share. He directs our attention to Woodworth v. Kales,26 F.2d 178 (6th Cir. 1928); Boyne City Lumber Co. v. Doyle,47 F.2d 772 (W.D. Mich. 1930); and, Conway Import Co. v. United States,311 F.Supp. 5, 14 (E.D.N.Y. 1969), to support his contention that the elements of estoppel and principles of consistency and fair dealing should preclude the Commissioner from taking a position inconsistent with the basis agreed to in the settlement agreement with Seega. The doctrines of res judicata, collateral estoppel and estoppel do not apply to petitioners because they have not been pleaded as affirmative defenses as required pursuant to Rule 39, Tax Court Rules of Practice and Procedure. Moreover, the technical doctrines of res judicata and collateral estoppel are clearly not applicable because a settlement agreement does not constitute a valid final judgment. See *246 Commissioner v. Sunnen,333 U.S. 591 (1948).
The settlement agreement entered into between Seega, Inc. and the Commissioner's agent was not a closing agreement under section 7121 of the Code. Nor was the settlement a compromise agreement under section 7122 of the Code. There has been no testimony and the report of examination does not disclose that the agreement was intended to apply to any shares held by petitioner or that either party was compromising its position in consideration for matters in the future. Compare Akron Dry Goods Co.,18 T.C. 1143, 1151 (1952). Both Woodworth v. Kales,26 F.2d 178 (6th Cir. 1928), and Boyne City Lumber Co. v. Doyle,47 F.2d 772 (W.D.Mich. 1930), involve circumstances different from those presented in the instant case and neither Kales nor Boyne City represent the prevailing view of the law nor are they controlling under our decision in Jack E. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). *247 Estate of Ella T. Meyer,58 T.C. 69, 71 (1972); Cape Henry Syndicate,30 B.T.A. 794, 798 (1934); Estate of John F. Dodge,13 B.T.A. 201 (1928).
In Conway Import Co. v. United States,311 F.Supp. 5, 14 (E.D.N.Y. 1969), the district court held that the Commissioner owes a duty of consistency in his interpretation of his regulations as they have been applied to a taxpayer unless and until he gives notice that a new rule will be applied in the future. The court relied on Canada Dry Bottling Co. of Florida v. Fahs,109 F.Supp. 187 (S.D. Fla. 1952), where it was held that a duty of consistency estopped the Commissioner from applying a different method of accounting than he had previously determined for earlier years. The court in Conway Import merely extended the equitable principle of consistency to apply to an instance where the taxpayer's record-keeping procedures had been approved in a prior conference report and thereafter upon prior audit. The facts in Conway Import are substantially and significantly different from those present in the instant case. *248 It is well established that the mere acceptance of acquiescence in returns filed by a taxpayer in previous years creates no estoppel against the Commissioner. David O. Rose,55 T.C. 28 (1970). Overlooking an error in a return upon audit does not preclude the Commissioner from correcting mistakes of law. Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). Likewise, the Commissioner is not precluded from making a determination as to the ownership of property in an income tax matter differently than he agreed to in a prior administrative settlement of a gift tax case when there has been an intervening change in case law. Massaglia v. Commissioner,286 F.2d 258 (10th Cir. 1961), affg. 33 T.C. 379 (1959). The settlement agreement reached by Seega and the Internal Revenue Service should be accorded the same dignity as the stipulated decision considered in United States v. International Bldg. Co.,345 U.S. 502 (1953). In a prior controversy, the Commissioner determined that International Building Co. had claimed an excessive basis for depreciating a building. While the case was pending *249 before this Court, the parties filed stipulations stating that "there is no deficiency in Federal income tax due" from the taxpayer for the years in question. We thereupon entered a decision. Subsequent thereto, the Commissioner assessed deficiencies for subsequent years once more challenging the correctness of the basis for depreciation. The Supreme Court refused to estop the Commissioner on the basis of an agreement between the parties to settle their controversy: We conclude that the decisions entered by the Tax Court for the years 1933, 1938 and 1939 were only a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed. There is no showing either in the record or by extrinsic evidence, see Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214, that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. Perhaps, as the Court of Appeals inferred, the parties did agree on the basis for depreciation. Perhaps the settlement was made for a different reason, for some exigency arising out *250 of the bankruptcy proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration. [345 U.S. at 505.] Seega, not petitioner, settled the basis of Datronics stock with the Commissioner. Although respondent has disallowed petitioner's entire cost basis in the Datronics stock, petitioner purchased the stock at 10 cents per share and we have found a basis of 10 cents. Petitioner purchased between 160,000 and 180,000 shares of Datronics stock in early 1961. He thereafter purchased shares on the open market and sold shares to new employees to entice them to join Datronics. We have accepted petitioner's testimony that he sold approximately 85,000 to 90,000 shares to the employees. Accepting petitioner's estimate of 160,000 shares initially purchased and 90,000 shares sold to the employees, petitioner was left with 70,000 shares for future sales. Before 1968 and 1969, petitioner sold 12,200 shares which would have left 57,800 shares to cover the 63,500 shares sold during 1968 and 1969. Petitioner testified that at the time of trial he still owned 58,000 shares of Datronics stock. *251 Petitioner did not produce any stock certificates nor did he attempt to produce the stock records of Datronics or explain his inability to do so; therefore, the only inference we can draw is that such records would not have been beneficial to his position. Interstate Circuit, Inc. v. United States,306 U.S. 208, 225-226 (1939); Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). With the total absence of proof in the record to show how many or when the additional shares were purchased or how many shares are still held by petitioner and their basis or time of acquisition, we could only speculate as to the basis of the shares sold.This we will not do. The next issue for decision involves the Commissioner's disallowance of charitable contributions claimed by petitioner for 1967, 1968 and 1969. We are convinced that both petitioners attended church regularly and that cash contributions were made in varying amounts. Although we have no tangible evidence to substantiate the amount of the church contributions, we believe petitioners' testimony and find that each petitioner contributed an average *252 of $5 a week or $260 a year to their respective churches. However, we must disallow the amounts claimed as paid to other approved or miscellaneous charities because petitioners were unable to identify the charities. Likewise, Petitioner John T. Gauthier presented no proof whatsoever that a $700 cash contribution was made to the Medical Mission Sisters during the 1968 taxable year. He was unable to even positively state that the donation was indeed made. The only evidence supporting a contribution to Medical Mission Sisters in 1969 was a letter from the Sisters acknowledging receipt of $339.70 from the brokerage firm of Jones, Kreeger & Co. We therefore allow the 1969 contribution to them in the amount of $339.70. We also allow a $2 contribution in 1969 to the Boys Club of Metropolitan Police of D.C.
On the 1968 Federal income tax return, petitioner reported $1,046.60 of gambling winnings less losses of $1,500. He also admits that he won an additional $250 which was not included in his reported 1968 gambling winnings. On his 1969 Federal income tax return, petitioner reported $2,432 of gambling winnings less losses of $2,400. Respondent disallowed the reported offsetting losses *253 for lack of substantiation. Respondent has not determined that petitioner realized additional unreported gross gambling winnings. The burden of proving the amount of the gambling losses is clearly on petitioner. Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. The issue is factual and must be decided on the basis of the evidence adduced. Petitioner has offered ticket stubs aggregating $2,872 for 1968 and checks payable to various race tracks aggregating $10,380 for 1969 to substantiate his position that his losses for each year exceeded his winnings. Petitioner was unable to produce other records upon which he claims that he summarized his net winnings and losses on a daily basis. Respondent maintains that petitioner has not carried his burden of proving that he sustained the gambling losses claimed on his 1968 and 1969 returns. Respondent challenges the adequacy of the proof because petitioner has admitted receiving gross winnings in excess of those reported on his return. However, the Commissioner's determination in his statutory notice of deficiency disallowed the losses and made no adjustments with respect *254 to winnings. Respondent relies on Henry Zooloomian,417 F.2d 1337 (1st Cir. 1969), affg. a Memorandum Opinion of this Court, and Daniel F. Donovan,359 F.2d 64 (1st Cir. 1966), affg. a Memorandum Opinion of this Court. In Zooloomian and Donovan the gambling losses claimed were disallowed because there was additional unreported winnings and no convincing proof concerning the total amount of the losses or winnings. Here, however, petitioner has admitted to an additional $250 of gambling winnings in 1968. Moreover, the above cases are distinguishable because petitioner has produced credible tangible evidence in the form of the ticket stubs and canceled checks to substantiate his losses. See Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. Petitioner should not be required to prove a negative fact not put in issue in the statutory notice or the pleadings; that is, that his winnings were not greater than the amounts reported. Petitioner has proven to our satisfaction that his gambling losses exceeded his reported gambling income and the winning of $250 not reported and, if respondent *255 suspects additional unreported gambling winnings his determination should have raised that issue specifically. The last issue for decision is whether petitioners are liable for the negligence penalty for 1967, 1968 and 1969. To avoid the addition to tax under section 6653(a), [2] petitioners must show that no part of any underpayment of income taxes was due to their negligence or intentional disregard of rules and regulations in preparing their tax returns. Marcello v. Commissioner,380 F.2d 499, 505-507 (5th Cir. 1967). We have decided that Mr. Gauthier's gambling losses exceeded his winnings and, therefore, that no part of the underpayment was due to petitioner's *256 lack of adequate race track records. Petitioners have not substantiated the cost basis in the Datronics stock sold. Although petitioner's erroneous reliance upon the prior Seega settlement was probably in good faith, such reliance does not excuse the facts supporting negligence. Cf. Douglas J. Lemery,54 T.C. 480 (1970); Franco Corelli, 66 T.C. (May 4, 1976). Petitioners were lax in both their bookkeeping responsibilities and their duty to retain their records. Mr. Gauthier explained that his stock records were lost or misplaced but his statements were vague and unconvincing and we find that his general lack of records was due to his own negligence. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
*. The record does not disclose which portion of the above-sold shares were acquired on the respective dates.↩
2. SEC. 6653. FAILURE TO PAY TAX. (a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩