JOHN P. CROWLEY and ELIZABETH R. COCKRELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crowley v. Commissioner
Docket Nos. 28826-84, 7746-87
United States Tax Court
T.C. Memo 1993-503; 1993 Tax Ct. Memo LEXIS 514; 66 T.C.M. (CCH) 1180; November 1, 1993, Filed *514 Decision will be entered under Rule 155. For John P. Crowley, petitioner at docket No. 28826-84: Stanley Klein and Michael J. Weitzner. For Elizabeth R. Cockrell, petitioner at docket Nos. 28826-84 and 7746-87: Gerald N. Daffner. For respondent: Roland Barral and William L. Blagg. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: In docket No. 28826-84 respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Against petitioner John P. Crowley: Year
Deficiency
1976
$ 52,437
1977
11,913
1978
31,302
Against petitioners: Year
Deficiency
1979
$ 104,908
1980
337,115
In Docket No. 7746-87, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 543,191
$ 137,443
$ 27,858 *   * 50 percent of the interest due on $ 543,191.
The instant cases were consolidated for purposes of trial, briefing and opinion (hereinafter referred to as the instant case). The parties have settled certain issues with respect to petitioner John P. Crowley. The parties *515 have agreed to reduce the deficiencies to $ 338 for the taxable year 1977 and $ 6,967 for the taxable year 1978. There is no deficiency for the taxable year 1976. The parties have also settled certain issues with regard to both petitioners and, subject to our decision on the issues set forth in this Opinion with respect to petitioner Elizabeth R. Cockrell, have agreed to reduce petitioners' deficiencies to $ 21,250 for taxable year 1979, $ 45,563 for taxable year 1980, and $ 93,810 for taxable year 1981. Petitioners have also agreed to be liable for an addition to tax under section 6651(a)(1). [1] Respondent conceded the additions to tax under section 6653(a)(1) and (2) for the taxable year 1981. The parties have stipulated that for taxable years 1978, 1979, and 1980, $ 3,484, $ 10,760, and $ 22,826, respectively, are substantial underpayments attributable to tax motivated transactions, for purposes of computing the interest payable with respect to such amounts, pursuant to section 6621(c). *516 The following issues remain for decision: (1) Whether petitioner Elizabeth R. Cockrell was a "nonresident alien," within the meaning of section 6013(a)(1) for any portion of the 1980 taxable year; [2] and (2) whether she is entitled to "innocent spouse" relief under section 6013(e) for taxable years 1980 and 1981. As petitioner John P. Crowley has settled all issues in the instant case with respect to himself, hereinafter we will refer to Elizabeth R. Cockrell as "petitioner" and John P. Crowley as Mr. Crowley. FINDINGS OF FACT When they filed petitions, petitioner and Mr. Crowley were residents of New York, New York. On November 14, 1979, petitioner and Mr. Crowley were married. At that time, petitioner was a Canadian citizen and Mr. Crowley was a U.S. citizen. They were married in a New York civil ceremony. On November 17, *517 1979, petitioner and Mr. Crowley were married a second time in a Canadian church. After the wedding and before returning to New York, they traveled to St. Martin and Colorado. Petitioner did not live in the United States prior to her marriage. During August 1979, just prior to her marriage to Mr. Crowley, petitioner quit her job, gave up the lease to her apartment, and resided in Canada with her brother. Petitioner and Mr. Crowley discussed the possibility of moving to Canada after their marriage. During the early part of 1980, Mr. Crowley had an interview with at least one potential Canadian employer and also discussed the possibility of opening a Canadian office with his own employer at that time. Petitioner and Mr. Crowley, however, did not make any definite plans to move to Canada, and Mr. Crowley remained employed in New York. During February 1980, petitioner completed and filed an application for status as a permanent resident. On March 31, 1980, petitioner appeared before the Immigration and Naturalization Service (INS). On April 17, 1980, the INS issued petitioner a "green card," which petitioner had sought in order to travel to Canada and return to the United States *518 without difficulty. During 1980, petitioner worked for a photographer in New York City for 1 week in exchange for learning about photography. For 2 weeks, she solicited, by telephone, on behalf of a messenger service located in New York City, for which she was compensated approximately $ 200. During December 1980, petitioner was hired as a stockbroker trainee in New York. In order to prepare for the series seven stockbroker examination required for her employment, petitioner studied about stocks and bonds at home. Prior to passing the exam, petitioner answered the phones at work. During the early part of 1981, petitioner passed the exam and obtained her stockbroker license. Subsequently, petitioner "cold-called" potential clients to sell them stocks and bonds. Neither petitioner's studies nor her work specifically included commodities tax straddles. During the years in issue, Mr. Crowley was a partner in TSM Associates, Sinclair Securities Company, and APEX Associates, which were partnerships that had engaged in commodities straddle transactions involving Treasury bill options. Mr. Crowley, as an employee in James Sinclair Trading Corporation, arranged commodities straddle *519 transactions for investors seeking "tax-sheltered investments." Petitioner was aware of Mr. Crowley's position as a "commodities trader." Petitioner accompanied Mr. Crowley at several commodities seminars during which she "milled about" at the back of the room, "drifted" in and out of the seminar rooms, and socialized with other wives attending the seminars. Petitioner attempted to attract clients for her husband at the hospitality suites provided by Mr. Crowley's employer. Petitioner, however, did not discuss commodities straddles transactions during the seminars or in the hospitality suites. When petitioner and Mr. Crowley were first married they rented a one-bedroom apartment in Manhattan. During 1981, they moved to a two-bedroom apartment which they rented for approximately $ 1,400 or $ 1,500 per month. Subsequently, they rented a ranch house on Long Island. Because they experienced marital difficulties, however, they returned to New York City. During 1982, petitioner and Mr. Crowley decided to separate. After their separation, petitioner moved into a small loft apartment and paid the security deposit with $ 2,000 which Mr. Crowley had given her. On August 18, 1983, *520 petitioner and Mr. Crowley were divorced. On June 15, 1980, petitioner and Mr. Crowley signed a joint tax return for taxable year 1979, which was filed on June 24, 1980, and reported a negative adjusted gross income in the amount of $ 71,312. On June 15, 1981, petitioner and Mr. Crowley signed a joint return for taxable year 1980, which was filed before the end of the month and reported an adjusted gross income of $ 8,055. On January 26, 1983, petitioner and Mr. Crowley signed a joint return for taxable year 1981, which was filed on January 31, 1983, and reported an adjusted gross income of $ 90,658. The losses disallowed in the notices of deficiency were claimed by petitioner and Mr. Crowley on their 1979, 1980, and 1981 returns as Mr. Crowley's share of the losses incurred by TSM Associates, Sinclair Securities Company, and APEX Associates. During the years 1979, 1980, and 1981, Mr. Crowley earned more than $ 380,000. Petitioner and Mr. Crowley entered a settlement agreement with respondent which provides that petitioner and Mr. Crowley may deduct 20 percent of the losses attributable to the commodities straddle transactions for the years in issue. The settlement contains *521 the standard settlement terms offered by respondent to all taxpayers involved in the Arbitrage Management tax shelter litigation project. OPINION The first issue we must decide is whether petitioner was a "nonresident alien" within the meaning of section 6013(a)(1) for any portion of the 1980 taxable year. Section 6013(a)(1) provides that a joint return shall not be made "if either the husband or wife at any time during the taxable year is a nonresident alien." Section 6013, however, does not define the term "nonresident alien." Section 1.871-2(a), Income Tax Regs., states: "The term 'nonresident alien individual' means an individual whose residence is not within the United States and who is not a citizen of the United States." For the years in issue, section 1.871-2(b), Income Tax Regs., provides: An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a *522 transient. If he lives in the United States and has no definite intentions as to his stay, he is a resident.
The regulations also provide that an alien by reason of his or her status as an alien is presumed to be a nonresident, but such presumption may be rebutted by "acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident." Sec. 1.871-4, Income Tax Regs.
The effect of the presumption is to relieve petitioner from having to establish at the outset that she is a nonresident alien. The burden of proof, however, remains on petitioner. Park v. Commissioner, 79 T.C. 252, 288 n.13 (1982), affd. without opinion 755 F.2d 181 (D.C. Cir. 1985); Lemery v. Commissioner, 54 T.C. 480, 486 (1970); Adams v. Commissioner46 T.C. 352, 361 n.8 (1966). Consequently, respondent must come forth with evidence that petitioner is a resident in order to rebut such presumption. Residency is a question of fact which must be *523 resolved by considering all the relevant facts and circumstances. Park v. Commissioner, supra at 286; Adams v. Commissioner, supra at 358; Jellinek v. Commissioner, 36 T.C. 826, 834 (1961). The term "residency" does not have the same meaning as "domicile", but to be a resident requires the taxpayer to have some "degree of permanent attachment for the country of which he is an alien." Jellinek v. Commissioner, supra at 834. In the instant case, the record establishes that petitioner resided in the United States during 1980. The record also establishes that, although petitioner and Mr. Crowley had discussed the possibility of returning to Canada, such discussion was nothing more than a "floating intention, indefinite as to time," which is insufficient to treat petitioner as a transient nonresident. Sec. 1.871-2(b), Income Tax Regs. We base our conclusion upon the fact that petitioner resided in the United States during the entire year and was employed in New York City. Moreover, she applied for status as a permanent resident and was issued a *524 green card during early 1980. In our view, such evidence rebuts the presumption of nonresidency. Furthermore, nothing in the record persuades us that petitioner had anything other than a floating, indefinite intention to return to Canada. Consequently, we hold that petitioner was a resident of the United States during 1980 and was entitled to file a joint return with Mr. Crowley. Accordingly, petitioner is jointly liable for the deficiency for taxable year 1980, unless she qualifies as an innocent spouse. We must next decide whether petitioner qualifies as an innocent spouse under section 6013(e) for taxable years 1980 and 1981. To qualify for innocent spouse status, the spouse seeking relief must satisfy all of the requirements of section 6013(e), which provides relief only when: (1) A joint return has been made for the taxable year; (2) a substantial understatement of tax attributable to grossly erroneous items of one spouse is found on such return; (3) the other spouse establishes that he or she did not know, and had no reason to know, of the existence of such substantial understatement; and (4) it is inequitable to hold such spouse liable for the deficiency in tax attributable *525 to such substantial understatement. Petitioner has the burden of proving each requirement of section 6013(e). Rule 142(a); Russo v. Commissioner, 98 T.C. 28, 31-32 (1992). Failure to prove any one of the requirements will preclude the spouse from relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). In the instant case, respondent concedes that a joint return was filed by petitioner in each of the years in issue and that a substantial understatement of tax exists within the meaning of section 6013(e)(3) and (4). Respondent, however, contends that such understatement was not attributable to a "grossly erroneous item." Section 6013(e)(2) defines a grossly erroneous item as: (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit or basis by *526 such spouse in an amount for which there is no basis in fact or law.
The phrase "no basis in fact or law," is not defined in section 6013. The courts, however, have held that a deduction has no basis in fact when the expense for which the deduction is claimed was never in fact made and a deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well settled legal principles or when no substantial legal argument can be made to support its deductibility. Ness v. Commissioner, 954 F.2d 1495, 1498 (9th Cir. 1992), revg. 94 T.C. 784 (1990); Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986). To prove that the disallowed deductions have no basis in fact or law, an individual seeking innocent spouse status is not entitled to rely on the Commissioner's disallowance of deductions contained in the notice of deficiency, without introducing further evidence to establish that a deduction has no basis in fact or law. Douglas v. Commissioner, supra at 763; Rampulla v. Commissioner, T.C. Memo. 1993-504; *527 Feldman v. Commissioner, T.C. Memo. 1993-17; Anthony v. Commissioner, T.C. Memo. 1992-133; Cohen v. Commissioner, T.C. Memo. 1991-413; Neary v. Commissioner, T.C. Memo. 1985-261. Petitioner has not offered any evidence that would support a finding that the losses claimed on the 1980 and 1981 returns have no basis in fact or law. The losses claimed on the returns arise out of certain straddle transactions of partnerships in which Mr. Crowley invested. To be entitled to deduct such losses Mr. Crowley would have been required to show that the partnerships engaged in the commodities straddle transactions primarily for the purpose of profit. Fox v. Commissioner, 82 T.C. 1001, 1021 (1984). In Fox v. Commissioner, supra, we held that the issue of whether the taxpayer engaged in commodities straddle transactions for the primary purpose of profit is a question of fact which involves an examination of all the circumstances surrounding the transactions in issue. [3]Id. at 1022. *528 *529 In the instant case, the only information in the record concerning the underlying transactions is the testimony of James Sinclair that TSM Associates "was a partnership engaged in speculative trading for the purposes of profit" and the testimony of Mr. Crowley that the disallowed deductions involved tax-sheltered transactions. Clearly, such testimony does not establish any basis for finding that the deductions are without any basis in fact or law. Petitioner contends that the fact that the parties entered into a compromise settlement is proof that the deductions in question are grossly erroneous items. Under the terms of the stipulated settlement, petitioner and Mr. Crowley were allowed to deduct 20 percent of the losses attributable to the commodities straddle transactions for the years in issue. The stipulations of settled issues filed in the instant case do not disclose the basis for the allowance of 20 percent of the deductions claimed by petitioner and Mr. Crowley. Consequently, we do not think that such compromise shows that the deductions in question were grossly erroneous items. To the contrary, the fact that respondent agreed to a compromise settlement suggests that *530 the deductions in question were less than grossly erroneous. Anthony v. Commissioner, T.C. Memo. 1992-133; Neary v. Commissioner, T.C. Memo. 1985-261. Similarly, the parties' stipulation that an increased rate of interest under section 6621(c) applies to a portion of the deficiencies does not indicate that the claimed deductions are grossly erroneous items. Id.
In short, petitioner has failed to prove that the deductions taken for losses incurred in the commodities straddle transactions have no basis in fact or law. Consequently, we hold that they are not attributable to "grossly erroneous items" within the meaning of section 6013(e)(2). Accordingly, we hold that petitioner is not entitled to innocent spouse relief under section 6013(e) for the taxable years in issue. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded that petitioner was a nonresident alien during the taxable year 1979. Consequently, petitioner is not jointly liable for the deficiency for the 1979 taxable year.↩
3. In 1984 Congress granted amnesty for pre-1981 straddle transactions. Sec. 108(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 630 as amended by sec. 1808(d) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2817-2818 (hereinafter referred to as amended sec. 108). In order to qualify for relief under amended sec. 108 of the Deficit Reduction Act of 1984 a loss on a disposition of a position is deductible if the position (1) is part of a straddle, (2) was entered into before 1982, (3) is not subject to the rules enacted in 1981, and (4) is a "transaction entered into for profit though not connected with a trade or business." In Boswell v. Commissioner, 91 T.C. 151↩ (1988), we held that under amended sec. 108, losses relating to commodities straddle transactions entered into before June 23, 1981, are deductible if the taxpayer's primary motive for engaging in the transactions was to realize an economic profit. In the instant case, because petitioner has failed to provide us with any information concerning the underlying transactions, we are unable to ascertain whether Mr. Crowley and petitioner would be entitled to relief under amended sec. 108 of the Deficit Reduction Act of 1984.